CHESTER K. WANAMAKER, executor, vs. JAMES A. SHAW.

Middlesex.     April 7, 1936. — May 26, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Negligence*, Contributory.   *Evidence*, Presumptions and burden of proof.

Evidence at the trial of an action for causing the death of a pedestrian, who, as he was crossing a public way, was struck by a motor vehicle driven by the defendant, warranted an inference of contributory negligence on the part of the pedestrian, and a refusal to rule that as matter of law such contributory negligence had not been proved by the defendant disclosed no error.

An instruction in the charge at the trial of an action of tort for personal injuries was *held* not to be a statement that the presumption of due care, established by G. L. (Ter. Ed.) c. 231, § 85, ceased at the time when the defendant pleaded that the plaintiff was not in the exercise of due care, or that the burden of proof of contributory negligence ceased to rest upon the defendant after all the evidence was in; and to have been sufficiently favorable to the plaintiff.

TORT.   Writ in the Third District Court of Eastern Middlesex dated January 29, 1935.

Upon removal to the Superior Court, the action was tried before *Beaudreau*, J.   There were verdicts for the defendant. The plaintiff alleged exceptions.

*B. H. Stoodley*, (*B. E. Kempton* with him,) for the plaintiff.
*H. W. Hardy*, for the defendant.

PIERCE, J.   This is an action of tort in two counts, instituted by the plaintiff, as executor of the estate of Emma Wanamaker, to recover for the death and conscious suffering of said Emma Wanamaker, under G. L. (Ter. Ed.) c. 229, §§ 5, 6.   The case was tried to a jury, and on June 14, 1935, a verdict was returned for the defendant on each count.   The plaintiff duly saved exceptions to the refusal of the judge to instruct the jury as requested, and to parts of the charge, as hereafter appears.   The record contains

all the material testimony which relates to the conduct of
the defendant and of the plaintiff's testate.

The accident took place on December 5, 1934, at about
five o'clock in the afternoon, near the junction of Summer
and Forest streets in Arlington, Massachusetts. The tes-
tate, a pedestrian, was struck by a motor vehicle operated
by the defendant. The defendant's automobile was pro-
ceeding in a northerly direction on the easterly side of Sum-
mer Street, and came in contact with the testate at a point
approximately fifty feet northerly from the Adams Square
Market and on the easterly side of said Summer Street,
about five or six feet from the white line marking the center
of the street. The defendant was operating his automobile
at a rate of speed which he estimated at fifteen miles an
hour, while another witness testified that it was twenty to
thirty miles an hour. Summer Street was a wide street,
well lighted and heavily travelled; there were some cars
parked along Summer Street in front of the stores in Adams
Square, and the defendant had just passed these motor
vehicles when the accident occurred. It had turned dark
at the time of the accident, and the arc light on the "island"
at the junction of Forest and Summer streets was lighted;
the lights were turned on on the defendant's automobile
and the defendant testified that he "judged he could see
about forty or fifty feet ahead of him."

The testate was a small woman slightly under five feet in
height and weighed about ninety-five pounds. Her clothes
and hat were dark. She always wore glasses and had excel-
lent sight for a woman of her years when she had her glasses
on. A witness, Helen L. Pierpont, called by the plaintiff,
testified in substance that she had come down Forest Street
to the junction of Summer Street; that she was just turn-
ing the bend to the south when she looked to the right and
saw the defendant coming on Summer Street at the rate
of twenty to thirty miles an hour; that the automobile was
on the right side of Summer Street; that she was near a
pole at the turn on Forest Street; that she did not pay any
attention to the automobile and was continuing home on

the dirt sidewalk on the westerly side of Summer Street; that while she was near the pole she was attracted by a sound; "that she turned around and looked and saw something open, bundles and a hat fall to the ground," and when her eyes left the objects only about five or six feet away from her she noticed a form which was that of the testate; that the objects were about three feet above the ground when she first saw them; that she could not quite observe what the object was that opened, it was a dark color and she saw a hat that seemed to be dark too; that there was a blood mark there and the head of the testate was right on the blood mark; and that it was not quite dark at the time of the accident but was just getting dusk. This witness further testified, in substance, that the body lay after the accident on the easterly side of the white line that marked the middle of the street; that there were no cross walks at all in the vicinity; that the street was macadam with a dirt sidewalk on the easterly side; that there were no curbstones on either side of the street; that the defendant's automobile stopped about fifty feet northerly from the body on the easterly side of Summer Street; that she did not see the testate at all until after the accident; that she did not know where she came from or how she got into the street; that her head was toward the witness and the rest of the body was toward the opposite side of the street; that the body was crouched up — her head was against her knees and her arms were under her; that the street was clear of motor vehicles at the time of the accident except for the automobile of the defendant and such motor vehicles as her testimony indicated may have been in front of the stores; that nothing obstructed her view of the defendant's automobile as it came down Summer Street; and that anyone else who might have been on the street near her with normal eyesight could have seen the defendant's automobile if he had looked in the direction from which the automobile came. She further testified, in substance, that she saw a witness for the plaintiff, one Gallagher, approaching her in an automobile; that she saw him at least at the junction of Summer and Forest streets, and she could see it

was Gallagher and his sister in the automobile; that she did not see the testate crossing Summer Street from the westerly side, and did not see her crossing from the easterly side; that from the westerly side of Summer Street between the place where she was when she first saw the defendant's automobile and the point she got to when the accident happened there was nothing to obstruct the view of anyone who cared to look south on Summer Street; that she supposed that anyone who might have been crossing at that time from that place would have a clear view down Summer Street toward the direction from which the defendant's automobile came; that she could see the defendant's automobile without any trouble; and that anyone in the automobile with the conditions as they were could see that way as clearly as she could see the other way.

The defendant, called by the plaintiff, testified in substance respecting the accident that he was proceeding along Summer Street in a northerly direction at a speed of about fifteen miles an hour; that he had just passed some automobiles parked along Summer Street in front of the stores in Adams Square; that he could see forty or fifty feet ahead of him; that when he first saw the testate she was "alongside to the left of his left mudguard just at the front of the mudguard"; that at that time she was not more than two or three feet from the mudguard; that the minute he saw her he put on his brakes and pulled his wheel to the right; that "this black object banged into the mudguard and was tossed to the left of the machine"; that he did not see the testate until he was practically right on her; that he could stop his automobile in twenty feet if it was going fifteen miles an hour; that after the accident his automobile proceeded not more than twenty or twenty-two feet; that he did not pull over the white line in order to pass the truck which was parked in front of the stores; that as he was driving along just before he saw the testate the left wheels of his automobile went about three feet to his right of the white line; that he could not tell where the testate came from; that the left front fender or mudguard of his automobile struck her; that she was a small woman dressed all

in black; that at the time he first saw her she was about at the white line in the middle of the street; and that after she was hit her feet were practically on the white line and her head was just the other side of it.

The testimony of Arthur Hancock, called by the plaintiff, disclosed in substance that he saw the testate lying on the street and picked her up and put her in the defendant's automobile; that she was lying about fifty feet away from the store known as the Adams Square Market; that her head was five feet four inches away from the center of the street, that is, on the right side of the street as the defendant's automobile was progressing.

It is noteworthy that the witness Pierpont and the defendant are the only witnesses who actually saw the accident and were able to describe the speed and position of the defendant's automobile before the collision.

At the close of the evidence the plaintiff filed with the court requests for instructions. The requests numbered 11, 12 and 20 were refused, and the plaintiff duly excepted. At the hearing before this court requests numbered 11 and 12 were waived, and request 20 was briefed and argued. Request 20 reads: "Upon all the evidence as a matter of law the defendant has not proved that the plaintiff's testate was guilty of contributory negligence in this case."

G. L. (Ter. Ed.) c. 231, § 85, upon which the plaintiff relies, reads: "Evidence." "In all actions, civil or criminal, to recover damages for injuries to the person or property or for causing the death of a person, the person injured or killed shall be presumed to have been in the exercise of due care, and contributory negligence on his part shall be an affirmative defence to be set up in the answer and proved by the defendant." The statute quoted is applicable under the penal death statutes and consequently to G. L. (Ter. Ed.) c. 229, §§ 5, 6, under which the instant action is instituted. *Murphy* v. *Boston Elevated Railway*, 262 Mass. 485. *King* v. *Weitzman*, 267 Mass. 447. *O'Connor* v. *Hickey*, 268 Mass. 454, 458. There "is no distinction between 'due care' describing the presumption as to the conduct of the plaintiff and 'contributory negligence' de-

scribing the burden of proof resting upon the defendant."
*O'Connor* v. *Hickey*, 268 Mass. 454, 461. It follows that
in an action, "civil or criminal, to recover damages for in-
juries to the person or property or for causing the death
of a person" the plaintiff was not entitled to a ruling that
upon all the evidence as matter of law the defendant had
not proved that the plaintiff's testate was guilty of contrib-
utory negligence, if there was any credible evidence which
would warrant the jury in finding as facts that the testate
was not actively and actually in the exercise of due care at
the time of the accident and that such lack of care was a
contributing cause of her death. *Hudson* v. *Lynn & Boston
Railroad*, 185 Mass. 510, 519, 521.

The question here is, Was there any credible evidence
that the testate, as a matter of fact, was guilty of a lack of
care for her safety which contributed to her injury and
death? The witness Pierpont in substance testified that it
was dark or dusky; that she could see and did see the on-
coming automobile of the defendant; that right after the
accident she saw the witness Gallagher approaching in his
automobile and could see and recognize Gallagher and his
sister in it. The testate could not have been confused by
the passing of vehicles other than that of the defendant,
because the evidence was undisputed that immediately
before the collision no such vehicles passed the scene of
the accident. There was evidence which warranted a finding
that the body of the testate after the accident lay on the
easterly side of the white line that marked the middle of
the street, with her head toward the westerly side of Sum-
mer Street. The testimony of the witness Pierpont to the
effect that she could and did see the defendant's automobile
clearly and that anyone standing on the westerly side of the
street could have seen the defendant's automobile clearly,
if believed, permitted the jury, with other evidence, to find
that the testate crossed Summer Street from its westerly
side, that she could and should have seen the defendant's
automobile approaching while she was crossing, and that
if she had exercised reasonable care for her safety she
would have ceased to advance until the automobile had

passed. Inferentially the plaintiff contends that the evidence is equally consistent with the testate's entry upon Summer Street from the easterly side, and that if such were the case there is no evidence that she could and should have seen the defendant's automobile in season to avoid the collision which injured her. We think that the evidence and the reasonable inferences therefrom warranted the submission of the issue of the testate's due care to the jury.

The plaintiff excepted to that portion of the charge which reads: "Our law says she is presumed to be in the exercise of due care so there is no burden upon the plaintiff to prove her due care. The burden is upon the plaintiff though to prove every material allegation in his declaration by a fair preponderance of the evidence. That does not mean that verdicts are to be given by suspicion, by conjecture. The burden is still upon the plaintiff to prove his case by a fair preponderance of the evidence. When the defendant comes into court and challenges that due care, that is, when he says by his answer she contributed by her own negligence to the accident, then the burden is upon him to prove contributory negligence, and when that comes about in the trial of a case that presumption then disappears and the due care or negligence of one party or the other is left for your final determination upon the evidence that you get on both sides of the case."

The charge in essence was sufficiently favorable to the plaintiff, and the plaintiff could not be said to have been prejudiced. Fairly considered it is not a statement, as the plaintiff contends, that the presumption of due care ceased when the defendant pleaded that the plaintiff's testate was not in the exercise of due care, or that the burden of proof ceased to operate after all the evidence was in.

*Exceptions overruled.*