JENNIE T. MURPHY, administratrix, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Middlesex.   October 21, 1927.— March 1, 1928.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Negligence,* Contributory, Street railway, Causing death. *Evidence,* Presumptions and burden of proof.

Evidence, at the trial of an action against a street railway company under G. L. c. 229, § 3, for causing the death of a pedestrian on a public way, that the motorman of a street car saw the pedestrian leave the sidewalk and proceed across the street looking neither to the right nor to the left but straight ahead with no change of speed, until, in spite of warning cries when he was some feet away from the car, he walked into its side and was thrown down; that the motorman sounded no gong; that the car was moving rapidly; that the motorman was conversing with fellow employees; and that no brake was applied before the warning shouts

were uttered, would warrant a finding that the motorman was negligent in failing to give timely warning to one who apparently needed it, and properly to control his car.

The presumption raised by G. L. c. 231, § 85, that one, who was not a passenger or an employee of a street railway company and whose life was lost through negligence of the company, was in the exercise of the due care required to support an action under G. L. c. 229, § 3, for the causing of his conscious suffering and death, is not controlling where all the material facts bearing on the subject of the due care of the decedent are beyond dispute and are consistent only with lack of due care on his part.

At the trial of the action above described, there was uncontradicted evidence, both from the plaintiff's and from the defendant's witnesses, that the pedestrian's sight and hearing were good; that the street car could be seen for at least three hundred feet before it reached an intersecting street from which the pedestrian came, and that it was making considerable noise; that the pedestrian walked into the car without looking either way; that the roadway was torn up and there was a temporary track which the car was using; that the pedestrian knew the state of the roadway and of the defendant's tracks and had passed the place of the accident daily. There was no evidence to explain the pedestrian's action. *Held*, that

(1) The presumption raised by G. L. c. 231, § 85, did not control, it appearing from undisputed evidence that, if the pedestrian did not know that a car was coming, he was clearly careless, and that, if he did know it was coming, he failed to use active care to guard himself;

(2) As a matter of law, the pedestrian was not in the exercise of the due care required by G. L. c. 229, § 3, for recovery, and a verdict for the defendant was required.

TORT under G. L. c. 229, § 3, by the administratrix of the estate of Daniel F. Murphy for causing his conscious suffering and death on August 10, 1922. Writ dated December 27, 1922.

In the Superior Court, the action was tried before *Burns*, J. The undisputed evidence of the plaintiff was that the intestate died without conscious suffering. Material evidence is stated in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

The case was submitted on briefs.

*S. H. Lewis & V. J. Zeo*, for the plaintiff.

*C. S. Walkup, Jr.*, for the defendant.

WAIT, J. The questions presented by the bill of exceptions are, whether there was evidence which, as matter of law, required a finding that the plaintiff's intestate did not

exercise due care for his safety, and whether the evidence warranted a finding that the defendant's motorman was negligent.

The motorman testified that, as his car approached the junction of Ellsworth Avenue and Cambridge Street, in Cambridge, he saw the intestate turn from Ellsworth Avenue, walk along the southerly sidewalk of Cambridge Street, leave the sidewalk and proceed across that street looking neither to the right nor to the left but straight ahead and with no change of speed, until, in spite of warning cries when he was some feet away from the car, he walked into its side and was thrown down. There was evidence which, though contradicted, would warrant finding that no gong was sounded; that the car was moving rapidly; that the motorman was conversing with fellow employees; and that no brake was applied before the warning shouts were uttered. There is, here, enough to justify finding that the motorman was negligent in failing to give timely warning to one who apparently needed it, and properly to control his car.

The other question is not so readily answered. The action is based upon G. L. c. 229, § 3, which permits recovery only when the intestate — if, as here, he is not a passenger or in the employ of the defendant — is in the exercise of due care. We have interpreted this to mean that the person injured shall have been actively and actually in the exercise of due care. *Hudson* v. *Lynn & Boston Railroad,* 185 Mass. 510. *Bothwell* v. *Boston Elevated Railway,* 215 Mass. 467. See *Mercier* v. *Union Street Railway,* 230 Mass. 397, 403. There is a presumption that the intestate was using such care, G. L. c. 231, § 85; but where all the facts are beyond dispute, and where they are consistent only with lack of due care, that presumption is not controlling. *Loyle* v. *Boston Elevated Railway,* 260 Mass. 404. *Tobin* v. *Nahant & Lynn Street Railway,* 260 Mass. 512. *Bagnell* v. *Boston Elevated Railway,* 247 Mass. 235. *Doyle* v. *Boston Elevated Railway,* 248 Mass. 89. *Duggan* v. *Bay State Street Railway,* 230 Mass. 370. *Pigeon* v. *Massachusetts Northeastern Street Railway,* 230 Mass. 392.

In the case before us, there is uncontradicted evidence —

much of it from witnesses called by the plaintiff — that the intestate at no time reached the rails upon which the car was moving, and that, without looking to right or left, he walked into the side of the car near the forward end. He was not dragged. The only marks of contact with the car were upon the right forehead. He was not run over. His skull was fractured and his liver and gall bladder were torn by the force of the blow or the fall. The only contradictory evidence is in regard to the point in Cambridge Street at which he was struck. One witness—who was driving a truck across Cambridge Street at Dana Street, which the plan in evidence shows was some 260 feet away, and who did not see him struck but saw him falling away from the car — testified that he saw the intestate step upon a planking in Cambridge Street at Ellsworth Avenue. All the witnesses who saw the contact, and who were on the car, testified that it took place some distance west of the planking. Blood stains in the roadway of Cambridge Street, where he lay when reached after the car was stopped, were thirty-three feet or more west of the planking. The intestate's sight and hearing were good. The car could have been seen for at least 300 feet before it reached Ellsworth Avenue. It was making considerable noise. The witness at Dana Street heard it and saw it. There is nothing to explain why the intestate should not have known of its approach. He knew that Cambridge Street was torn up; that for over a month work on the tracks had been in progress; that the outbound rails were not in use; that a temporary track lay in the street between the curb and the permanent inbound track which had been relaid during the month. He passed the place daily. A temporary planking about twelve feet long in the middle of Ellsworth Avenue where it entered Cambridge Street enabled passers on foot or in vehicles to cross the temporary track. Outbound cars used the permanent inbound rails. Inbound cars used the temporary rails. Stone blocks were piled in the street or on the edge of the sidewalk along the curb. In order to cross Cambridge Street from the Ellsworth Avenue side, one had to pass between or near the piled blocks, traverse three and a half feet of road-

way, go over the temporary track above the street surface, then traverse six feet more of roadway, before reaching the permanent inbound track.    From the farther side of this track to the curb, the outbound track and the roadway were torn up.    At Ellsworth Avenue, crossing was made easier by the planking at the temporary track and by logs laid between the rails of the outbound track and in the roadway.    There is no evidence to explain why the intestate sought to cross. There is no evidence that he used any care to ascertain whether an approaching car made crossing more hazardous in such a state of the roadway.    The only explanation of his conduct, consistent with knowledge that a car was approaching, is that he thought he had time to pass in front of it or that he intended to pause for it to pass him, and forgot that it would approach on the inbound track and so be nearer to him by about ten feet.

If he did not know that a car was coming, he was clearly careless; if he did know it, then he failed to use active care to guard himself.    Testimony by a witness called by the plaintiff — that he kept on after shouts of warning had been uttered — was uncontradicted and was corroborated by testimony introduced by the defendant.    Had the fact depended only on testimony of the defendant's witnesses, or on controverted testimony introduced by the plaintiff, we might feel that the jury would be warranted in disregarding it and that the statutory presumption might not be overcome. On the actual state of the evidence we think that, as matter of law, it requires a finding that the intestate was not in the exercise of due care.

The case falls within the decision in *O'Callaghan* v. *Boston Elevated Railway*, 249 Mass. 43, *Bagnell* v. *Boston Elevated Railway, supra,* and *Will* v. *Boston Elevated Railway,* 247 Mass. 250.    The ruling of the judge was right and entry will be

*Exceptions overruled.*