MARGARET M. LYDON, administratrix, *vs.* BOSTON ELE-
VATED RAILWAY COMPANY.

Suffolk.    April 9, 1941. — May 28, 1941.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Negligence,* Street railway: pedestrian; Contributory; In use of way.
*Evidence,* Presumptions and burden of proof, Interrogatories, Death
certificate. *Proximate Cause.*

Testimony of an employee of the defendant, called by the plaintiff,
which, although in many respects self-contradictory, contradicted por-
tions of answers by the defendant, unfavorable to the plaintiff, to
interrogatories introduced in evidence by the plaintiff, warranted dis-
belief of such portions and, with other evidence, warranted a finding
favorable to the plaintiff.
A finding of negligence of the motorman of a street car was warranted
by evidence showing that he failed seasonably to slacken the speed of
the car upon seeing a pedestrian about to cross the tracks, whereby
the pedestrian was struck by the car.
Evidence did not require a finding that a pedestrian, struck while at-
tempting to cross street railway tracks when a car was approaching,
either failed to look to see whether a car was approaching or looked
carelessly or was otherwise guilty of contributory negligence.
A death certificate and a "medical-legal" diagnosis by the medical
examiner containing recitals of "multiple injuries including fractured
skull" and "alcohol" or "alcoholism," with a hospital record and
diagnosis containing no reference to alcohol, did not preclude findings
that the proximate cause of the death was the injuries and that alcohol
was merely a condition.

TORT.    Writ in the Superior Court dated December 9,
1936.

At the trial before *Williams,* J., a verdict for the plaintiff
in the sum of $6,800 was recorded.

*D. L. Allison,* (*F. W. Ziniti* with him,) for the plaintiff.

*J. E. Hannigan,* (*E. M. McMahon* with him,) for the
defendant.

Cox, J.    The jury returned a verdict for the plaintiff on
the death count in the declaration (G. L. [Ter. Ed.] c. 229,
§ 3), the count for conscious suffering having been waived.
Under leave reserved the trial judge allowed the defend-

ant's motion for entry of verdict, and the plaintiff's exception to this allowance presents the only question.

It is undisputed that at about 5:41 in the afternoon of November 16, 1936, the plaintiff's intestate, as he was crossing Dorchester Street in South Boston from north to south, was struck by the front left hand corner of one of the defendant's street cars when he was "practically across the further inbound rail." The night was clear and, apart from some question whether there might have been leaves on the track, the highway and rails were dry.

The plaintiff introduced in evidence certain interrogatories propounded by her, and the defendant's answers thereto. Apart from the disclosure by these answers as to what happened, to which reference will be made later, the only witness who testified as to the movements of the deceased was the operator of the defendant's car, who was called as a witness by the plaintiff. The defendant contends, in the circumstances, that the plaintiff is bound by the answers to the interrogatories, and also by the testimony of the operator.

It is the general rule that a party is not bound by the testimony of witnesses that he calls. In *Commonwealth* v. *McNeese*, 156 Mass. 231, 232, Holmes, J., said: "But in this Commonwealth there is now no rule that a witness must be believed simply because he is not impeached and tells a plausible story. The jury decide that question uncontrolled." Compare *Harding* v. *Brooks*, 5 Pick. 244, 248. It is for the jury to say whether the witnesses are entitled to credit. *Giles* v. *Giles*, 204 Mass. 383, 385. They may disbelieve the whole or a part of a party's testimony, even where it is uncontradicted, *Commonwealth* v. *Hyland*, 155 Mass. 7, 8; *Sullivan* v. *Old Colony Street Railway*, 200 Mass. 303, 309; and may disbelieve a party's witnesses *in toto*, *Lindenbaum* v. *New York, New Haven & Hartford Railroad*, 197 Mass. 314, 323. A party by calling witnesses does not necessarily become bound by their testimony, *Haun* v. *LeGrand*, 268 Mass. 582, 584, see *Flynn* v. *First National Stores Inc.* 296 Mass. 521, 522; *Wolfe* v. *Checker Taxi Co.* 299 Mass. 225, 228; *Kingsbury* v. *Terry*, 300 Mass. 516,

518, inasmuch as the witnesses may be disbelieved by the jury, *Salem Trust Co.* v. *Deery,* 289 Mass. 431, 435. The jury may discredit that part of the testimony of one that tends to exonerate him from fault, and believe only that portion tending to show negligence on his part. *Clark* v. *C. E. Fay Co.* 281 Mass. 240, 242. The defendant relies upon a statement in *Duggan* v. *Bay State Street Railway,* 230 Mass. 370, at page 379, where it was said: "Where from the facts which are undisputed or indisputable, or shown by evidence by which the plaintiff is bound, only one rational inference can be drawn and that an inference of contributory negligence or want of due care, then the question of due care or contributory negligence is one of law for the court and a verdict for the defendant should be directed"; and another statement in *Murphy* v. *Boston Elevated Railway,* 262 Mass. 485, at 489: "Had the fact [of the plaintiff's intestate's contributory negligence] depended only on testimony of the defendant's witnesses, or on controverted testimony introduced by the plaintiff, we might feel that the jury would be warranted in disregarding it and that the statutory presumption might not be overcome." We do not understand, however, that these expressions change the general rule that a party is not bound by the testimony of a witness called by him.

Apart from the question whether the evidence in its material aspects was uncontradicted, undisputed or indisputable, see *O'Callaghan* v. *Boston Elevated Railway,* 249 Mass. 43, 45; *Murphy* v. *Boston Elevated Railway,* 262 Mass. 485, 489; *Boni* v. *Goldstein,* 276 Mass. 372, 375–376; *Jackman* v. *O'Hara,* 280 Mass. 496, 498; *Joyce* v. *New York, New Haven & Hartford Railroad,* 301 Mass. 361, 363–364, the defendant contends, in effect, that the evidence upon which the plaintiff must rely to establish negligence of its operator requires, as matter of law, a finding that the deceased was contributorily negligent. See *Conrad* v. *Mazman,* 287 Mass. 229, 234; *Stacy* v. *Dorchester Awning Co. Inc.* 290 Mass. 356, 359, 360; *Engel* v. *Boston Ice Co.* 295 Mass. 428, 437; *Brown* v. *Boston & Maine Railroad,* 302 Mass. 90, 92. The effect of the answers introduced by the plaintiff to interrogatories

propounded to the defendant must be considered, for unless contradicted by other evidence they are binding on the plaintiff. *Warren* v. *DeCoste*, 269 Mass. 415, 419–420. *Vozella* v. *Boston & Maine Railroad*, 296 Mass. 491, 493.

These answers state that the street car was travelling at the rate of approximately twelve miles an hour up to the time when the operator saw the deceased about twenty or twenty-five feet away; that at "that time" the operator immediately applied the emergency brake and had reduced the speed of the car to about six miles an hour at the time of the accident; that the deceased was crossing the street from right to left; and that the operator rang the gong. The operator testified that he first saw the deceased about twenty feet ahead of the car, and probably two or three feet from the curbstone; that the deceased started across on a straight line, and, as the car approached him, he came toward it at an angle. The collision occurred to the west of West Sixth Street, which leads from the northerly side of Dorchester Street. The operator testified as to crossing West Sixth Street "where the buses come," and of approaching "the intersection of West Sixth and Mercer streets on the opposite side." The plan of the locus that was in evidence shows Dorchester Street to be straight for a distance of at least four hundred fifty feet easterly from the point of collision. This street has a slight grade, and is approximately fifty-five feet wide from curb to curb, and it is twenty feet from the northerly curb to the first rail of the inbound track. The operator testified that the car had stopped at West Fifth Street, three hundred thirty feet easterly from West Sixth Street, and then proceeded down Dorchester Street at a speed of about fifteen miles an hour; that he proceeded at that speed, "reducing it to about twelve miles per hour going across West Sixth Street where the buses come"; that he had a clear view in front of him after he left West Fifth Street; that his brakes were in good condition; and that he could have made an emergency stop, "having in mind the condition of the street on this night," in about seventeen feet going twelve miles an hour. Despite the answer to the interrogatory that the operator immediately applied the

emergency brake when he saw the deceased about twenty
or twenty-five feet away, the operator testified that he saw
the deceased ahead of him twenty feet and he continued on
and struck him with the front of his car, when the deceased
was practically across "the further inbound rail"; that when
he first saw him he was going twelve miles an hour; that he
did not attempt an emergency stop at that time; that he
thought he was going to "pass the man with the car"; that
"he expected the man would let him pass with the car going
pretty nearly twelve miles an hour, and then the man walked
across with his chin on his shoulder and seemed to be walk-
ing on the sides of his feet; that when he first saw the de-
ceased twenty feet away he did nothing to slacken the speed
of the street car because he thought he could get by him;
that he saw the deceased as he [the operator] was crossing
West Sixth Street; that the deceased was two or three feet
away from the street car when the witness first slackened
its speed by throwing the car into emergency; that when he
slackened the speed he was going about twelve miles per
hour; that the deceased was then in front of the street car
near its left side two feet away." He also testified that the
deceased was about eight feet from the curbstone when he
"suddenly walked on an angle toward the car"; that the
deceased seemed to hasten his steps to get over the tracks,
but that "he did not seem to try to beat the car," and did
not look up when the gong was sounded; that so far as he
could tell, the deceased was not observing the approach of
the car, but that he, the operator, kept on going at a speed
of twelve miles an hour for some distance before he started
to brake his car, because he thought he could get by; that
as the deceased turned on an angle toward the car, he was
"a couple of feet from the nearest inbound rail" and that
from then on he did not change his direction up to the time
the accident happened. Apart from the contradictory state-
ments in the operator's testimony, there was additional
evidence, which, if believed, might well have been considered
as affecting his credibility. Two of the ordinances of the
city of Boston that were introduced in evidence provide
that in approaching any public or private way intersecting

that on which the railway is located, the speed of the car must be reduced to such a rate as will make it possible to stop immediately, and that in the absence of any exclusive right of way on the part of the car, it is necessary that its speed be, from time to time, so restricted as to permit others safely to exercise their common right to a reasonable use of the road.

We are of opinion that it was a question for the jury whether the operator was negligent. It could have been found that the speed of the car, as it was "crossing" West Sixth Street, was in violation of the ordinance in that it was not reduced to such a rate as would make possible an immediate stop. The jury could have found, from answers to interrogatories and the operator's testimony, that after the car started from the stop at West Fifth Street, it proceeded at a rate of speed of about fifteen miles an hour, but that this speed was reduced to about twelve miles "going across West Sixth Street." The answers to interrogatories and testimony of the operator are to the effect that he first saw the deceased when he was about twenty or twenty-five feet "away," or about twenty feet "ahead" of the car. He testified that when he saw the deceased "twenty feet away he did nothing to slacken the speed of the street car," and that the deceased was two or three feet away from it when he first slackened its speed by applying the emergency brake. It is true that the answers to interrogatories and the operator's testimony are also to the effect that the emergency brake was applied when the deceased was twenty feet away from the car. But in these respects the evidence, as already pointed out, was contradictory. The jury could make use of their common sense and conclude that a street car, travelling at about twelve miles an hour for a distance of twenty feet, would not be in collision at the end of that distance with a man who had to walk approximately twenty-one feet in the same space of time to arrive at that point. They could conclude that the street car was travelling from three to four times as fast as the man and, therefore, that it would travel three or four times the distance covered by him in a given time. In these circumstances of obvious conflict in the testi-

mony, we are of opinion that the jury could have found that when the operator first saw the deceased, he was two or three feet from the northerly curb of Dorchester Street, but that at that time, he was much more than twenty feet away. In other words, they were not required to accept as a fact something that they could find was not supported by a reasonably possible mathematical demonstration. As already pointed out, it was for the jury to say what part, or parts, of the evidence would be accepted or rejected.

The deceased was in full view of the operator on a street that could have been found to be well lighted, and, although the latter testified that he thought he was going to pass with the car and that the deceased would let him, it was for the jury to determine whether this exercise of his thought or judgment, if it was a judgment, was reasonable in the circumstances. Despite the answers to interrogatories and the testimony of the operator that he applied his emergency brake immediately upon seeing the deceased, the jury could have found that he did not, and that he was negligent in failing to take precautions against hitting the deceased by reducing his speed sooner than he did. *Scherer* v. *Boston Elevated Railway,* 238 Mass. 367, 368. *Boni* v. *Goldstein,* 276 Mass. 372, 375, and cases cited. *Conrad* v. *Mazman,* 287 Mass. 229, 233. *Stacy* v. *Dorchester Awning Co. Inc.* 290 Mass. 356, 358, 359. See *Minihan* v. *Boston Elevated Railway,* 260 Mass. 490, 491. As bearing upon the testimony as to the application of the brake, it is to be observed that the operator testified that after he hit the deceased, he travelled a distance of approximately fifty feet.

It was for the jury to determine from the evidence upon which the plaintiff must rely for recovery, whether the deceased was contributorily negligent. The first we know of the deceased from the evidence is when he was two or three feet from the curbstone. What he had been doing before he arrived at this point does not appear. In any event, he was crossing the street, and his presence there in the circumstances shown did not require a finding that he did not look to see whether a street car was approaching,

or that he looked carelessly. For all that appears, he may have looked carefully, or he may have thought reasonably that he could cross the street in safety, relying to some extent, as he was entitled to, upon the operator of the car using reasonable care to avoid running him down. *Boni* v. *Goldstein*, 276 Mass. 372, 376–377. *Conrad* v. *Mazman*, 287 Mass. 229, 234. *Snow* v. *Nickerson*, 304 Mass. 63, 65. *Hess* v. *Boston Elevated Railway*, 304 Mass. 535, 538. As is said in *DeAngelis* v. *Boston Elevated Railway*, 304 Mass. 461, at page 462, "If the decedent formed a judgment that, under the circumstances, it was safe for him to cross the street in front of the approaching car, and he failed by but a few feet in doing so [as in the case at bar], we cannot say as matter of law that such a judgment, although mistaken, was also careless." *Minihan* v. *Boston Elevated Railway*, 260 Mass. 490, 491. It is true that the operator testified that the deceased did not look up when the gong was sounded, and that so far as he could tell, the deceased was not observing the approach of the car. But he also testified that the deceased walked across with his chin on his shoulder. The evidence does not disclose which shoulder, but if it was the left, it is obvious that with his head in this position the approaching car would be in the line of his vision. It could have been found that the deceased turned on an angle toward the car when he was a "couple" of feet from the nearest inbound rail. It seems apparent that this change of direction, in the circumstances disclosed, was only an incident to the deceased's being hit by the car, and that the jury could have found that he would have been hit in any event if he continued across the track without changing his direction. As bearing upon the question whether the deceased was aware of the approaching car, it will be recalled that the operator testified that he seemed to hasten his steps to get over the tracks, but that he did not seem to try to "beat" the car. The jury may have considered that this testimony indicated not only that the deceased was aware of the approaching car, but also that he was not attempting to "beat" the car in the sense that he was acting unreasonably. *Grant* v. *Boston Elevated*

*Railway*, 229 Mass. 219, 224.   *Scherer* v. *Boston Elevated Railway*, 238 Mass. 367, 368.

The "medical-legal" diagnosis, that is, the one made by the medical examiner, was "multiple injuries including fractured skull," and alcohol. The certificate of death gives as a cause: "Alcoholism." It is assumed that the deceased was suffering from alcoholism, but there is nothing in the record that discloses its effect upon his movements or sensibilities. This evidence, in the circumstances, did not require, as matter of law, a finding that the deceased was contributorily negligent. *Baczek* v. *Damian*, 307 Mass. 167.

G. L. (Ter. Ed.) c. 229, § 3 provides, among other things, that if a street railway company (such as the defendant) by reason of the negligence of its agents or servants while engaged in its business, "causes the death" of a person in the exercise of due care who is not a passenger or in its employ, it shall be liable in damages as therein provided. The defendant contends that the deceased's death was not caused by it or its car, but that, in part at least, it was caused by alcoholism. In addition to the medico-legal diagnosis, hereinbefore referred to, the hospital records disclose that the deceased's injuries were "fractured skull, lacerated scalp, contusions left femur, and fractured left hip." The clinical diagnosis, that is, the one made by the interne at the Boston City Hospital, was "question fractured skull, question fractured left femur." Nothing is said in those records about alcohol except in the medical-legal diagnosis. The deceased died on the day of his injury at 6: 20 in the evening. The inference is warranted from the evidence that he was taken to the hospital soon after he was injured. In the certificate of death, under the heading, "Disease, or Cause of Death (Primary or Secondary)" the following appears: "Multiple injuries including fractured skull.   Struck by street railroad car   Alcoholism." This record of death is *prima facie* evidence of the facts recorded, G. L. (Ter. Ed.) c. 46, § 19, *Walcott* v. *Sumner*, 308 Mass. 413, 415, and unless there is other evidence to control, the facts therein stated must be taken as true. But, as already pointed out, there are at least two places in the hospital record where no

reference is made to alcoholism, one in the statement of the injuries, the other in the clinical diagnosis. Section 1 of said c. 46, provides, among other things, in effect, that the disease or cause of death, "defined so that it can be classified under the international classification of causes of death," shall be among the facts contained in the certificate of death. See *Dow* v. *United States Fidelity & Guaranty Co.* 297 Mass. 34, 37. That classification calls for a statement of (1) the principal cause of death and related causes of importance, and (2) contributory causes of importance. It also calls for a clear indication where death is due to violent causes. A standard certificate of death, see *Walcott* v. *Sumner*, 308 Mass. 413, relating to the international classification contains the following subtitle: "The principal cause of death and related causes of importance were as follows." The blank space immediately beneath this is filled in by way of example as follows: "Injured by a fall; fractured skull." This is followed by the subtitle: "Other contributory causes of importance," and the blank space following this contains the words "Chronic myocarditis." There is nothing in the record in the case at bar to the effect that any autopsy was performed on the deceased. See G. L. (Ter. Ed.) c. 38, § 6 (St. 1939, c. 475); G. L. (Ter. Ed.) c. 113, § 2.

We are of opinion that the jury could have found that the proximate cause of death was the injuries received by the deceased when he was struck by the car. *Wiemert* v. *Boston Elevated Railway*, 216 Mass. 598. *Kelleher* v. *Newburyport*, 227 Mass. 462, 465. *Charles* v. *Boston Elevated Railway*, 230 Mass. 536, 540, 541. *Wallace* v. *Ludwig*, 292 Mass. 251, 252–259. *Wolfe* v. *Checker Taxi Co.* 299 Mass. 225, 228, 229. It is true that the record discloses no expert testimony that the injuries sustained in the collision were an adequate cause of the deceased's death. See *Kelleher* v. *Newburyport*, 227 Mass. 462; *DeMarco* v. *Pease*, 253 Mass. 499, 506. One entry, at least, in the hospital record gives support to the contention that the injuries sustained were the cause of death. The plaintiff was not bound by the medical-legal diagnosis, which makes reference to alcohol.

*Wolfe* v. *Checker Taxi Co.* 299 Mass. 225, 228. It is to be observed that the record of death, which calls for a statement of the "Primary or Secondary" cause, first states "Multiple injuries including fractured skull." This is followed by the statement "Struck by street railroad car" with the concluding word, "Alcoholism." We are of opinion that, in the circumstances, the jury could have found that the primary cause of death was the injuries sustained, and that alcoholism was a condition, and not a cause.

It follows that the exceptions are sustained, the verdict returned by the jury is to stand, and judgment is to be entered on that verdict for the plaintiff.

*So ordered.*