JAMES C. GULOTTA, Judge Pro Tern.
Plaintiff appeals a trial court judgment dismissing his suit against Louisiana Power and Light Company (LP & L). We affirm.
On June 30, 1983, plaintiff was working as a house painter at 447-49 Belleville Street in New Orleans. During the course of that job, it became necessary for him to reposition an aluminum ladder being used to paint the second story exterior of the house. As the plaintiff and a co-worker were moving the ladder, it came into contact with an overhead electrical power line. This contact caused plaintiff to suffer a severe electrical shock and left him unconscious. Plaintiff was resuscitated at the scene but suffered serious injuries.
Subsequently, plaintiff filed a petition for worker’s compensation and/or personal injury for damages for injuries resulting from the June 30, 1983 accident. The following defendants were named in plaintiff’s suit: Pat and Warren Haun, owner of the house; ABC Liability Insurance Company, the Haun’s liability insurer; Don Carlos, plaintiff’s employer; Hartford Insurance Group, Carlos’ worker’s compensation insurance carrier; and LP & L, the installer of the electrical power line. Prior to trial, plaintiff voluntarily dismissed the Hauns and their insurer from this suit and settled his claims against his employer and his employer’s worker’s compensation insurance carrier. At the time of trial, the only remaining defendant was LP & L.
*826 Because the jury was unable to reach a decision after trial in this matter, the parties agreed to waive a jury trial and submit the matter to the trial judge. The trial judge rendered judgment dismissing plaintiffs action at his cost. Plaintiff subsequently filed a motion to vacate the judgment and/or for new trial which was denied by the trial judge. Plaintiff now appeals the trial court judgment.
On appeal, plaintiff argues the trial judge erred in concluding that his injuries were not proximately caused by LP & L’s violation of the National Electrical Safety Code (NESC). This argument refers to the trial judge’s finding that the portion of the power lines near the bay window on the side of the house where the accident occurred was too close to the house according to NESC standards. However, as the trial judge noted, the plaintiff was not working at the bay window area when the accident occurred. Rather, he was working at an area on that side of the house where the power lines were placed at a sufficient distance from the house according to NESC standards.
Regardless of that fact, plaintiff argues that if the portion of the power lines which violated NESC standards had been rerouted to comply with those standards, the portion of the lines in the area where contact was made with the aluminum ladder also would have been rerouted farther away from the house and the extra clearance between the power lines and the house at that point would have prevented this accident. Plaintiff also argues that the placement of a protective coating on the entire line would have prevented this accident.
In his reasons for judgment, the trial judge rejected this argument stating that the law only requires one to discharge his duty within the ambit of risk causing the harm. Therefore, a circumstance where compliance outside of the ambit of risk may have avoided the harm is merely coincidental.
The record in this case clearly establishes that the power lines located in the area where the accident occurred were in compliance with NESC standards. Testimony at trial established that the NESC is the recognized safety code which applies to utilities and their equipment. Both Dr. Salvador Longo and Mr. Frederick Brooks, experts in the field of electrical engineering, testified that burn marks on the ground and on the power line established the exact location of the accident. Both experts agreed that the distance between the point in the power line where contact was made and the highest projection of the house at that point was 7.67 feet. This amount of horizontal clearance exceeded the applicable NESC minimum requirement of five feet. It was undisputed that the distance from the portion of the power line where contact was made to the ground exceeded the vertical clearance requirements set forth in the NESC.
In order to establish liability for negligence on the part of a power company, a plaintiff must prove not only that his injuries were caused by the transmission of electricity from the power company’s line, but also that the risk which resulted in plaintiff’s injuries was an unreasonable one and that the power company failed to comply with a duty or standard of care requiring it to take precautions against that danger. Levi v. Southwest Louisiana Electric Membership Cooperative (SLEMCO), 542 So.2d 1081 (La.1989). Clearly, the electricity from LP & L’s line caused the plaintiff’s injuries in this case. However, it is equally clear that the area of the power lines where contact was made was in compliance with NESC standards. Therefore, the trial judge correctly found that any infraction by LP & L of NESC standards at a different point in these power lines did not cause this accident. The possibility that correcting infractions at other points in the line would have prevented this accident is mere speculation and cannot serve as the basis for finding that these infractions caused this accident.
The remaining issues in this case are whether or not the power lines in question presented an unreasonable risk of harm and whether or not LP & L breached a duty regarding those lines. In Hebert v. *827 Gulf States Utilities Company, 426 So.2d 111 (La.1983), the Louisiana Supreme Court stated that electric companies that utilize high power lines are required to exercise the utmost care to reduce hazards to life as far as practicable but they are not required to guard against situations which cannot reasonably be expected or contemplated.
Plaintiff argues that, regardless of compliance with NESC standards, the power lines involved in the accident presented an unreasonable risk of harm because of their close proximity to the house and because of the existence of a brick wall approximately five feet from the house which necessitated the use of ladders outside of the brick wall to perform routine maintenance work. According to the plaintiff, these factors brought workers in dangerously close proximity to the power lines.
In Washington v. Louisiana Power and Light, 532 So.2d 798 (La.App. 4th Cir.1988), affirmed at 555 So.2d 1350 (La.1990), the plaintiffs sued the power company following the electrocution death of their father which occurred when the decedent accidently allowed his citizens band radio antenna to come into contact with an overhead power line. In reversing the trial court judgment in favor of the plaintiffs, this court found that the defendant did not breach its duty owed to the decedent.
In finding that LP & L did not breach its duty owed to the decedent in the Washington case, this court noted that the decedent was aware of the power line and its hazards. In light of this fact, this court found that it was not reasonably foreseeable that the decedent would intentionally move his antenna, in the upright position, within dangerously close proximity of the power line. The Washington court noted that this accident was particularly unforeseeable to the power company because the decedent had a prior accident involving the radio antenna contacting the power line in which he escaped serious injury but became acutely aware of the danger of such an action. Therefore, this court held that the power company could not be held liable for an accident which occurred when the decedent knowingly placed himself in a dangerous situation.
In affirming this court’s decision in Washington v. Louisiana Power and Light, supra, the Louisiana Supreme Court followed the formula set forth in Levi v. SLEMCO, supra, as to the duty of a power company to provide against injuries resulting from the escape of electricity from an uninsulated power line. The Levi court stated that the duty of a power company in such a situation is a function of three variables: “(1) the possibility that the electricity will escape; (2) the gravity of the resulting injury, if it does; and (3) the burden of taking adequate precautions that would avert the mishap. When the product of the possibility of escape multiplied times the gravity of the harm, if it happens, exceeds the burden of precautions, the failure to take those precautions is negligence.” Levi v. SLEMCO.
In the Washington case, the Louisiana Supreme Court applied the negligence test enunciated in the Levi case and concluded as follows:
“... although there was a cognizable risk that the antenna stationed in the corner of Mr. Washington’s backyard could be lowered and moved to within a dangerous proximity of the power line, that possibility could not be characterized as an unreasonable risk and the power company’s failure to take additional precautions against it was not negligence.
Under the circumstances, there was not a significant possibility before the accident that Mr. Washington or anyone acting for him would detach the antenna and attempt to carry it under or dangerously near the power line.” Washington v. Louisiana Power and Light, supra at 1353.
Therefore, the Washington court determined that even though the gravity of loss resulting from contact with an uninsulated power line is usually extreme, the high degree of gravity of loss multiplied by the very small possibility of the accident occurring in that case did not outweigh the burdens or costs of relocating or insulating the power line. The court noted that the burdens or costs to the power company of relocating or insulating the power line *828 would have been warranted if the power company knew the accident would happen or even if the chance of it occurring had been greater.
In the present case, it was undisputed that LP & L had no prior knowledge of the maintenance work being performed at the house at 447-49 Belleville Street by plaintiff and his co-workers. The evidence also established that there were no prior accidents involving the power lines at this address. Furthermore, the testimony of the plaintiff and his co-workers established that they were fully aware of the existence and dangers of the power lines near the Haun’s house and of the specific danger associated with the use of aluminum ladders near power lines. When the plaintiff was questioned at trial about his knowledge of the potential danger of the power lines near the Haun’s house, the following exchange transpired:
“Q. Now, you knew that those were electrical wires?
A. Yes.
Q. And they had electricity in it?
A. (Witness nods head affirmatively)
Q. You knew that electricity could hurt you?
A. Yes, sir.
Q. And you knew aluminum ladders would conduct electricity, didn’t you?
A. Yes, sir.”
In light of the plaintiff’s admitted knowledge of the dangers of the power lines near the Haun’s house and the use of an aluminum ladder near those power lines, there was not a significant possibility before this accident that the plaintiff would carelessly move an aluminum ladder in such close proximity to the power lines. Because the plaintiff placed himself in this situation with full knowledge of the danger involved, his argument that this accident occurred because of an unreasonable risk of harm created by LP & L is without merit. See Wright v. U.S. Gypsum Company, 538 So.2d 291 (La.App. 4th Cir.1989), writ denied at 546 So.2d 166 (La.1989).
The fact that the power lines next to the Haun’s house did not present an unreasonable risk of harm was demonstrated by the fact that roofing and guttering work on the second story of the side of the house where the accident occurred was safely completed in the days preceding plaintiff’s accident. Therefore, a person exercising reasonable care could have safely performed the job being attempted by the plaintiff at the time of his accident.
Plaintiff argues that the factual situation in the instant case is more analogous to the situations in Brock v. New Orleans Public Service, Inc., 433 So.2d 1083 (La.App. 4th Cir.1983) and Dobson v. Louisiana Power and Light Company, 567 So.2d 569 (La.1990), than to the situations in Washington v. Louisiana Power and Light, supra and Wright v. U.S. Gypsum Company, supra. In the Brock case, the utility company was held liable for the death of a roofer who was electrocuted when a piece of guttering that he was carrying up an aluminum ladder to the roof came into contact with an overhead power line. In the Dobson case, the utility company was held liable, in part, for the death of a tree trimmer who was electrocuted when his metallically reinforced safety rope contacted a power line.
Although the Brock and Dobson cases involved factual situations similar to that in the instant case, those two cases are distinguishable due to the findings in those cases that neither of the decedents had knowledge of the extreme danger posed by the power lines involved in the accidents. In this case, plaintiff’s testimony revealed that he was fully aware of the danger of the power lines near the Haun’s house and of the specific danger involved in the use of an aluminum ladder near those lines. Under these circumstances, we conclude that this accident was caused solely by plaintiff’s reckless disregard for his own safety and not by an unreasonable risk of harm created by LP & L. The risk created by plaintiff’s conduct was not within the scope of LP & L’s duty.
Accordingly, the trial court judgment dismissing the plaintiff’s action at his cost is affirmed.
AFFIRMED.