USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 95-1391 ERNEST L. SAMUELS and RULING ANGEL, INC., Plaintiffs, Appellants, v. HOOD YACHT SYSTEMS CORPORATION, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ ____________________ Before Lynch, Circuit Judge, _____________ Aldrich and Campbell, Senior Circuit Judges. _____________________ ____________________ Robert J. Murphy with whom Thomas E. Clinton and Clinton & Muzyka ________________ _________________ _________________ were on brief for appellants. Thomas M. Elcock with whom Richard W. Jensen and Morrison, __________________ ___________________ _________ Mahoney & Miller were on brief for appellee. ________________ ____________________ November 21, 1995 ____________________ ALDRICH, Senior Circuit Judge. This diversity _____________________ action was brought in the United States District Court for the District of Massachusetts by Ernest L. Samuels of Ontario, Canada, and Ruling Angel, Inc. of Delaware, owners of the sailing yacht RULING ANGEL, claiming negligence by Hood Yacht Systems Corp. (Hood) of Rhode Island, the manufacturer of her mast. The mast broke while the yacht was under sail.1 The incident occurred off the coast of St. Croix, Virgin Islands, with wind at 25-30 knots, and seas 6-8 feet, which the yacht's captain testified was within normal Caribbean weather. The mast broke in two, which her captain, testifying to the obvious, said should not have happened. However, at the close of plaintiffs' case the court granted Hood's motion for a directed verdict. Plaintiffs appeal. We reverse. In addition to conceding normal weather Hood agreed there was no evidence of mishandling. The captain testified that the rigging was sound, and had not failed. So did plaintiffs' expert, Hadley. Although there was a suggestion that, before designing the mast, Hood had been given an understatement of the vessel's weight, Hadley, a naval architect, testified that her "righting moment," the vessel's  ____________________ 1. Strictly, she was under sail and power, in order to head higher into the wind and clear the land ahead. -2- ability to stand up to wind pressure, and a determinant of the needed strength of her mast, would have been the same.2 The court's decision hung on its resolution of plaintiffs' expert's testimony. (Emphasis ours, see post.) ____ THE COURT. The question is, what is your opinion as to what caused it? HADLEY. My opinion is there was cracking in [the mast] that could not be resisted. The mast itself is a barely adequate _________________________________________ design structurally. There . . . was ____________________ movement in the mast . . . fore and aft, excessive movement fore and aft, that could have caused these cracks. . . . .  The mast was a barely adequate design, and that any kind of crack, which I believe existed at the time, could cause that mast to break. Further examined by plaintiffs' counsel, Mr. Clinton, the witness complained of imperfect placement of screw fastenings leading the mast to crack. The court again inquired: THE COURT. It's my understanding that . . . the dismasting . . . occurred because of two factors: One, the cracks, as you've displayed to the jury. A. Yes. THE COURT. And a marginal[ 3] what? __________________  ____________________ 2. The force of this testimony is borne out by the fact that when Hood made a replacement mast, and clearly knew the vessel's weight, it did not make a heavier one. 3. The word "marginal" seems to have been the court's interpretation of "barely adequate." -3- A. Factor of safety . . . the design was ________________ barely adequate . . . it was barely large enough to perform the task that it was asked to do. . . . . THE COURT. So what you're saying is, there's two factors, one is the cracks as described. A. Yes. THE COURT. And the other is that the ___________________________ mast itself was too -- ___________________ A. Too light. _________ There followed a recapitulation by the witness in which the term "barely adequate" again occurred, ending with further questioning by the court. THE COURT. . . . What caused the cracks, did you say? A. I believe that this excess of movement which would be existent in too light a spar could cause these cracks. . . . . THE COURT. So ultimately you're saying ____________________________ that the spar was too light for the ship? ________________________________________ A. Yes. THE COURT. All right. And if the spar ____________________________ was too light for the ship, it means that _________________________________________ it's not only not -- that it's not _________________________________________ marginally well constructed, but it's _________________________________________ poorly constructed? __________________ A. It was too marginal for the ship, ____________________________________ considering the service it was to be put _________________________________________ into, yes. _________ -4- This last is an interesting statement: for RULING ANGEL's "service," cruising, there is a different, a greater margin of safety needed than for racing. This point was not pursued, but is it not the racers who crack on sail, regardless? That cruisers need a greater margin is a recognition that not just wind and weather, but other matters as well, require a reservoir of protection. Lack of care, wear and tear with no repair, for example, are ills that cruisers, not needing to be kept up to scratch, may particularly suffer from. The fact that it was not wind and weather, but some other weakness by which RULING ANGEL's margin of safety was exceeded, should not affect plaintiffs' case. Nor is it material that the ill was not identified. This must be omnibus protection, or it would be meaningless. Following this, Hood moved that Hadley's testimony be stricken because counsel's answer to an interrogatory as to what Hadley would testify was given before Hadley had been consulted, and hence was a fraud on the court. Also Hood complained because the answer omitted cracks. The court sustained the latter complaint. His testimony is stricken just as to his testimony regarding the crack as causing, as being one of the causations of the dismasting . . . the rest of his testimony may stand for your consideration. -5- Hood did not object; nor has it appealed. It cannot complain now.4 Thereafter Hadley's final cross-examination by Hood was as follows: Q. Just so we're clear, you too are of the opinion that it was okay to put [this mast] on, barely okay, but okay? A. If this were my design and I were specifying a mast to Hood, I would not specify [this mast]. It is barely adequate. I would recommend, for example, I said the factor of safety was about one-and-three quarters, I would recommend a safety of more like two-and- a-quarter. Q. No question, people did. But you agree it's not dangerous, you agreed this was adequate? A. Barely, yes. Q. And you said so in the -- A. Yes. Q. Nothing else. MR. CLINTON. No further questions. When, at the close of plaintiffs' case, Hood moved for directed verdict the court ruled as follows: THE COURT. . . . [I]t seems to me that if . . . the basis ultimately for the damages was the alleged defective manufacture and/or design of the mast,  ____________________ 4. There was no fraud on the court, in any event. See, ___ Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989) _____ _______________ ("fraud on the court" consists of "unconscionable scheme" to interfere with judicial system's ability to adjudicate properly). -6- your witness said that it was marginally appropriate, or words to that effect. How does it get to the jury? MR. CLINTON. Everybody else said he wouldn't have put it on the vessel[5] . . . . We also . . . have implied warranty . . . . THE COURT. He said it was marginally good. I'm going to grant the motion on that basis. The Appeal6 __________ Manifestly this ambivalent witness had not been prepared. Even after the perspicacious court's questioning had straightened him out (see emphasized testimony, supra), _____ on final cross he lapsed back. Nor did plaintiffs' counsel get the message. Small wonder a frustrated court called Enough. However, should it have? Hadley's testimony ran two ways. Omitting the final cross, a careful reading, ante, with particular ____ attention to the emphasized portions, and special attention to where the court's question begins, "So ultimately you're saying . . . ." would warrant a finding that in the witness's opinion the design was (barely) sufficient in itself, but too  ____________________ 5. Putting it bluntly, nothing that anybody else said advanced plaintiffs' case. 6. Hood cites no authority supporting its contention that we should look to Virgin Island law because of the fortuitous circumstance that the vessel was in that jurisdiction when the negligent design manifested itself. For such lack we stay within the forum. -7- light -- slight -- in the sense of there was added an insufficient margin of safety for this ship. Then, in the last cross, he took it all back. Plaintiffs, however, were not bound by their expert's reversal; the jury was free to choose. Lane v. ____ Epinard, 318 Mass. 664, 63 N.E.2d 463 (1945) is an articulate _______ example. Plaintiff sued for breach of a contract to hire her as a housekeeper. Defendant testified that this was to be only if his present housekeeper decided to leave, and she decided not to. Plaintiff testified that defendant had agreed he would discharge her. Plaintiff also testified that defendant had not agreed to discharge her. In affirming the trial court's denial of defendant's motion for a directed verdict the court said, The plaintiff's testimony is contradictory in many respects and is inconsistent in reference to material aspects of her case. . . . The jury . . . could accept such portions of her testimony as they deemed worthy of credence. 318 Mass. at 666, 63 N.E.2d at 465. Where a party testifies finally against her own interest she will normally be bound thereby. See O'Brien v. ___ _______ Harvard Rest. & Liquor Co., 310 Mass. 491. 493, 38 N.E.2d ___________________________ 658, 659 (1941) (citing cases).7 A party, however, is not  ____________________ 7. We note that the Lane court did not consider the ____ chronology of the plaintiff's conflicting testimony and may have been generous in this respect. -8- bound by her witness' unfavorable testimony if there is other evidence. See Lydon v. Boston Elevated Ry., 309 Mass. 205, ___ _____ ___________________ 206, 34 N.E.2d 642, 644 (1941), and cases cited. It is rudimentary that a witness may be believed in part and disbelieved in part. Id. at 206, 211, 34 N.E.2d at 644, 646. ___ Where Hadley was self-contradictory, the jury could believe whichever account it chose.  To repeat, in spite of Hadley's final cross- examination, the jury could have accepted his earlier testimony that the mast's design was too light in the sense that it did not provide a sufficient margin of safety for a cruising yacht. A directed verdict for Hood was inappropriate. Reversed. ________ -9-