VERONICA F. DOW *vs.* UNITED STATES FIDELITY AND GUARANTY COMPANY.

Essex.  December 10, 1936. — March 29, 1937.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Insurance,* Accident. *Evidence,* Competency, Death certificate, Presumptions and burden of proof. *Words,* "Accidental."

A record of a city clerk under G. L. (Ter. Ed.) c. 46, § 1, of a death, which, as to "Disease or cause of death," stated "Burns of body and legs. Accident. Exposed to scalding water in bath tub," was admissible at the trial of an action upon a policy of accident insurance insuring the decedent, and under § 19 of said c. 46 was *prima facie* evidence of the facts therein recorded.

Evidence, that one insured by a policy of accident insurance died from second and third degree burns three hours after being helped, still conscious, from a bathtub of scalding hot water into which the water still was running, with the city clerk's death record stating that the death was due to "accident" and exposure to the water, and evidence that the insured was in good health at the time of his death, warranted findings that, under the provisions of the policy, the death was due to bodily injury which was "accidental," was not "intentional," and was not caused directly or indirectly by sickness or disease.

CONTRACT. Writ in the Superior Court dated September 14, 1935.

The action was tried before *Collins,* J. There was a verdict for the plaintiff in the sum of $7,932.45. The defendant alleged exceptions.

*S. Parsons, (E. F. Cook* with him,) for the defendant.
*J. W. Santry, Jr.,* for the plaintiff.

QUA, J. The plaintiff sues as beneficiary in an accident insurance policy which insured her husband, Fred F. Dow, an osteopathic physician, against accidental bodily injuries, fatal or nonfatal, which should result independently and exclusively of all other causes in certain enumerated losses, including loss of life, but not extending to nor covering any injury caused or contributed to, directly or indirectly, by sickness or disease, nor loss resulting from any means or act which, if used or done by the insured while in possession of all mental faculties, would be deemed intentional or self inflicted.

Evidence was introduced by the plaintiff of these facts: On May 30, 1935, the plaintiff and the insured stayed at home. They had visitors in the afternoon and also in the evening, when they played cribbage. As seen by a neighbor that night the insured was "absolutely normal." The plaintiff and the insured retired about eleven o'clock. On the morning of the thirty-first the insured arose about 7:15 and went directly to the bathroom, which was nearly opposite the bedroom of the plaintiff and the insured on the other side of a corridor "probably five feet wide." He usually shaved before his bath. The plaintiff "thinks she probably went back to sleep." Between 7:30 and 7:40 she heard "a sort of an anguished moan, as if someone were in distress," loud enough so that she could hear it in the bedroom. She rushed to the bathroom, the door of which was closed but not locked. The insured was sitting in the tub, which was very large and "rather high," with his feet under the running water from the faucet, with his body erect from the waist up and his hands forward on the side of the tub, trying to pull himself up. The water was so hot the plaintiff could not put her hand in it to pull the plug. She succeeded in getting the insured out of the tub and onto the floor. He "helped himself." He was conscious and moaned and cried and tried to get up and assisted in putting on a bath robe as well as he could by raising himself from the floor. He suffered "very excruciating pain." After being carried to the bedroom he asked what time it was and said, "For God's sake, help me."

Pieces described by the plaintiff's witnesses as "flesh" came from his body. After the insured had been taken out of the tub, water was still running into it, whether hot or cold did not appear by any direct testimony. There was a foot of water in the tub. The walls of the bathroom were reeking with "sweat." The insured died at a hospital at about 11 A.M. the same day.

The plaintiff introduced this medical testimony: The body of the insured was practically burned from head to foot with the exception of his face, forearms and hands. There were first, second and third degree burns. Death was due to second and third degree burns. There were third degree burns especially on the feet, lower legs and back, extending up to the nape of the neck.

The defendant introduced a hospital record which tended to show excessive drinking by the insured, with a diagnosis of "nervous exhaustion," and that he had been discharged from the hospital April 7, 1935. There was other evidence, however, tending to contradict this and also tending to show that for several weeks before May 31 he was in good condition. The defendant also introduced medical evidence of an autopsy performed upon the insured tending to indicate certain diseased conditions capable of causing death and leading to an opinion on the part of the witness that what caused the insured to remain in scalding water long enough to produce the burns "was something beyond the man's control in the nature of disease that caused him to be incapable of responding to hot water over this period. The disease was an angina attack and cardiac attack." As the jury was not obliged to believe this evidence, we do not recite it in further detail. The evidence as to the autopsy was to the effect that no flesh was missing from the body, but that the outer layer of skin was missing. There was also evidence that on April 6, 1935, the insured suffered from "nervous exhaustion," but that an examination of his heart and blood pressure showed that they were normal.

1. There was no error in admitting in evidence the death certificate from the records of the city clerk, which under

"Disease or cause of death" contained this statement: "Burns of body and legs. Accident. Exposed to scalding water in bath tub." By G. L. (Ter. Ed.) c. 46, § 19, such a record is "prima facie evidence of the facts recorded." The word "Accident" was properly included in the record of facts as part of the cause and manner of death which by G. L. (Ter. Ed.) c. 38, § 7, the medical examiner was required to report to the city clerk. Cause and manner of death in a report of this kind are necessarily matters of opinion or judgment deduced from other facts found rather than matters of direct observation. Moreover, G. L. (Ter. Ed.) c. 46, § 1, requires that the clerk's record define the cause of death "so that it can be classified under the international classification of causes of death." That classification calls upon medical examiners who certify to deaths from violent causes to indicate clearly "the fundamental distinction of whether a death was due to accident, suicide, or homicide . . .," and one of the classes is "181. Accidental burns (conflagration excepted)." Physicians' Pocket Reference to the International List of Causes of Death, published by the Bureau of the Census, 1931, pages 17, 18. *Branford Trust Co.* v. *Prudential Ins. Co.* 102 Conn. 481, 486. *New England Trust Co.* v. *Farr,* 57 Fed. (2d) 103, 110. Wigmore on Evidence (2d ed.) § 1646, 441. See *Shutesbury* v. *Hadley,* 133 Mass. 242, 246–247; *Shamlian* v. *Equitable Accident Co.* 226 Mass. 67; *Broadbent's Case,* 240 Mass. 449, 452; *Commonwealth* v. *Slavski,* 245 Mass. 405, 416; *Silva* v. *Fidelity & Casualty Co.* 252 Mass. 328; *Wolf's Case,* 285 Mass. 181, 183.

2. There was no error in denying the defendant's motion for a directed verdict. We assume for the purposes of this decision that the burden was upon the plaintiff to prove the existence of all conditions necessary to recovery under the terms of the policy and to disprove all which could prevent recovery, although there would seem to be doubt as to this concerning some of the most important limitations, which are not a part of the general insuring provisions, but which appear for the first time near the end of the policy.

*Silva* v. *Fidelity & Casualty Co.* 252 Mass. 328, 330. *Nichols* v. *Commercial Travellers' Eastern Accident Association*, 221 Mass. 540, 546.

There was ample evidence that the injury and death of the insured were accidental. The record of the city clerk was *prima facie* evidence of this. Apart from that record there was evidence of accidental death. An event is an "accident" or is "accidental" when it occurs unexpectedly, without intention or design. *Bohaker* v. *Travelers Ins. Co.* 215 Mass. 32, 34. *Henderson* v. *Travelers Ins. Co.* 262 Mass. 522, 525. *Sontag* v. *Galer*, 279 Mass. 309, 312. No contention that the insured committed suicide was made at the trial or has been made before us and there is a presumption against it which is particularly strong in a case where the method would be so painful. *Bohaker* v. *Travelers Ins. Co.* 215 Mass. 32, 36. The jury could find that the injury and death were not the consequences of intentional as distinguished from accidental acts of the insured or of "any means or act which, if used or done by the Insured while in possession of all mental faculties, would be deemed intentional or self-inflicted." Doubtless the insured intended to turn on the water and very likely he intended to get into the tub, but it is nevertheless highly improbable that he intended to immerse himself in scalding water. Laying aside the possibility of sickness or disease, which we shall discuss in a moment, the jury could well find that the scalding resulted from unusual or unexpected heat in the water or from some slip, mistake or false judgment on the part of the insured as to the physical factors involved. This would be sufficient to characterize the occurrence, when viewed as a whole, as accidental rather than as intentional. We do not see how we could rule as matter of law that there was no accident in such a case as this without thereby withdrawing from the field of accident a large class of happenings which by the common understanding of men, and therefore by the true intent of the policy, would be deemed accidental. *United States Mutual Accident Association* v. *Barry*, 131 U. S. 100, 121. *Western Commercial Travelers' Association* v. *Smith*, 85 Fed. 401,

405. *Preferred Accident Ins. Co.* v. *Patterson,* 213 Fed. 595, 597. *Zurich General Accident & Liability Ins. Co. Ltd.* v. *Flickinger,* 33 Fed. (2d) 853. *Aetna Life Ins. Co.* v. *Kent,* 73 Fed. (2d) 685, 686. *Urian* v. *Equitable Life Assurance Society,* 310 Penn. St. 342. *McNally* v. *Maryland Casualty Co.* 162 Wash. 321. This case is not like *Smith* v. *Travelers Ins. Co.* 219 Mass. 147, 148, *Henderson* v. *Travelers Ins. Co.* 262 Mass. 522, 525, and *New Amsterdam Casualty Co.* v. *Johnson,* 91 Ohio St. 155, where the policy required external and accidental means and the external means contained no accidental quality. *Landress* v. *Phoenix Mutual Life Ins. Co.* 291 U. S. 491.

There was evidence that sickness or disease did not contribute to the injury. There was affirmative evidence that the insured was in good health for several weeks preceding his death; that he was "absolutely normal" the night before; that he was following his usual routine on the morning of his death; and that he was conscious and cooperative even while being assisted from the tub and immediately afterwards. None of the evidence tending to show disease which could have contributed to cause death came from sources by which the plaintiff was bound. All the evidence was to the effect that the burns alone were sufficient to cause death, though the witnesses differed as to how soon death would occur from that cause alone.

We appreciate the difficulty in explaining why, if the insured was free from disease and in the possession of his faculties, he remained in the hot water long enough to produce such severe burns. But we have no knowledge which would justify us in saying that such a thing is impossible. It could have been found that the water was very hot. The insured may have fallen in unexpectedly. He may have slipped back while trying to get out. Extreme pain and shock may have rendered him incapable of effective effort. See *Clark* v. *Iowa State Traveling Men's Association,* 156 Iowa, 201, 208. If the jury found all facts in favor of the plaintiff which the evidence would support and believed the evidence which tended to exclude sickness and other conceivable nonaccidental causes and causes which

would fall beyond the range of liability, we cannot say as matter of law that on all the evidence they could not find it more probable than otherwise that the circumstances of the injury and death were such as to bring them within the coverage of the policy. *Lewis* v. *Brotherhood Accident Co.* 194 Mass. 1, 6, 11–13. *Bohaker* v. *Travelers Ins. Co.* 215 Mass. 32. *Nichols* v. *Commercial Travellers' Eastern Accident Association*, 221 Mass. 540. *Silva* v. *Fidelity & Casualty Co.* 252 Mass. 328. *Kramer* v. *New York Life Ins. Co.* 293 Mass. 440. *Ballam* v. *Metropolitan Life Ins. Co.* 295 Mass. 411. *United States Fidelity & Guaranty Co.* v. *Blum*, 270 Fed. 946, 955. Compare *Leland* v. *Order of United Commercial Travelers*, 233 Mass. 558.

3. There was no error in refusing the defendant's request numbered 19, in so far as it was not granted in substance. It assumes facts which the jury were not obliged to find. A judge cannot be required to separate into parts a request which is framed as a single unit. *Aste* v. *Putnam's Hotel Co.* 247 Mass. 147, 152.

*Exceptions overruled.*