**William J. BLAKE and Theresa R. Blake, individually and as administrators of the Estate of Betty Ann Blake, Plaintiffs,**

v.

**SOUTHCOAST HEALTH SYSTEM, INC., d/b/a Charlton Hospital; First Physicians Corporation, Inc.; Miguel Brilliantes; Michael A. Pellegrino; and Thomas F. Cahill, Defendants.**

No. CIV.A. 00–10591–WGY.

United States District Court, D. Massachusetts.

June 17, 2002.

---

59. *Id.* at 53 (citations omitted).

Philip N. Beauregard, John A. Markey, Beauregard & Burke, New Bedford, MA, for Plaintiffs.

Stephen P. Harten, Ratcliffe & Burke, LLP, William J. Davenport, Colleen Cronin, Bloom & Buell, Nadine Nasser Donovan, Rindler & Morgan, P.C., Joanne Gulliford Hoban, Rindler & Morgan, P.C., Alan B. Rindler, Rindler & Morgan, Curtis R. Diedrich, Sloane & Walsh, Boston, MA,

Martin C. Foster, Joan Eldridge, Foster & Eldridge, Cambridge, MA, for Defendants.

Ralph Calderaro, Quincy, MA, for Movant.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

## I. INTRODUCTION

This well-tried medical malpractice case resulted in a complete defendants jury verdict after twenty-four days of trial. It returns to this Court on a motion for a new trial brought by the Plaintiffs, William J. and Theresa R. Blake, acting individually for themselves and as administrators of their deceased daughter's estate (collectively the "Blakes"). In their motion, the Blakes argue that: (a) the verdict was against the weight of the evidence; (b) the jury was influenced by the events of September 11; (c) the redacted portion of the death certificate of the alleged victim of this medical malpractice action should have been admitted under the vital statistics exception to the rule against hearsay, Fed.R.Evid. 803(9); and (d) the entire death certificate should have been admitted as prima facie evidence pursuant to Mass. Gen. Laws ch. 46, § 19 in accordance with Fed. R. Evid 302.

## II. DISCUSSION

The more general aspects of the motion, i.e., that the verdict was against the weight of the evidence and the like, need be addressed only summarily. While well argued by all counsel, the Blakes' case had significant causation problems and was eminently triable. The verdict of the twelve person [1] jury, who deliberated over

---

1. While the Federal Rules of Civil Procedure require but a six-person jury, Fed.R.Civ.P. 48 (2001), this Court routinely impanels twelve jurors in every civil case because all the perti- nent sociological research demonstrates that the best small group decision-making is obtained in groups of 10–14 people. *See, e.g., Richard A. Posner, An Economic Approach to*

five days, bears all the indicia of being well considered. The jury's verdict was certainly not against the weight of the evidence, and was in no way the product of bias or prejudice invited by attorney argument or behavior. A new trial is not warranted upon any of the general arguments.

One particular evidentiary ruling, however, requires more extended consideration. The death certificate of Betty Ann Blake, the alleged victim of the claimed malpractice, listed "complications of asphyxia by choking" as the cause of her death, and this was the centerpiece of the Blakes' theory—Betty Ann Blake slowly choked to death over twenty-seven hours while receiving inadequate care from the Defendants. One needs only read this Court's opinion ruling on the Defendants' motion to dismiss (where a plaintiff's allegations must be fully accepted as true) to recognize the force of this theory. *Blake v. Southcoast Health System, Inc.*, 145 F.Supp.2d. 126 (D.Mass.2001).

From the outset the Defendants fought to exclude the death certificate. Both sides briefed the issue specifically and argued to the Court. Hearing Tr. 31:21 to 34:16 (Nov. 13, 2001). As might be expected from practitioners who try primarily in the courts of the Commonwealth, where most such medical malpractice cases are heard, the arguments of both sides primarily focused on the well developed Massa-

chusetts law governing the admissibility of death certificates as an exception to the rule against hearsay. *See* William G. Young, John R. Pollets & Christopher Poreda, 20 Mass. Prac. Evid. § 803.9 (2d ed.1998).

The Court took a different tack. It reasoned that the case contained a federal cause of action under the Americans with Disabilities Act and that, in federal court, the Federal Rules of Evidence govern this issue irrespective of the law of Massachusetts. *See* Fed.R.Evid. 101, 1101(b); *Cameron v. Otto Bock Orthopedic Indus.*, 1994 WL 51630 at *1 (D.Mass. Jan. 7, 1994), *aff'd*, 43 F.3d 14 (1st Cir.1994); *Fitzgerald v. Expressway Sewerage Constr. Inc.*, 177 F.3d 71, 74 (1st Cir.1999). Accordingly, this Court found the death certificate admissible pursuant to Fed.R.Evid. 803(8)(c) as a reliable government record. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 162, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988).

As the trial progressed, however, it became increasingly evident that, whatever had caused the death of Betty Ann Blake after twenty-seven hours of suffering, it was not "complications of asphyxia by choking." It was evident virtually beyond dispute that Betty Anne Blake had swallowed a large piece of chicken which, while it passed her airways, became lodged further down her esophagus. While this caused her severe, and at times intense,

the Law of Evidence, 51 Stan. L.Rev. 1477, 1498 (1999). Rule 48 has been severely criticized by some courts, *see, e.g., Colgrove v. Battin*, 413 U.S. 149, 166, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973) (Marshall, J.) (dissenting) (referring to a jury of six as "Montana's six-man mutation"); *Williams v. Florida*, 399 U.S. 117, 118, 90 S.Ct. 1914, 26 L.Ed.2d 446 (1970) (Harlan, J.) (dissenting); *Ciulla v. Rigny*, 89 F.Supp.2d 97, 102 n. 6 (D.Mass.2000); *Lirette v. Shiva Corp.*, 27 F.Supp.2d 268, 271–272 n. 3 (D.Mass.1998); and knowledgeable legal commentators, *see* Judith Resnik,

*Changing Practices, Changing Rules: Judicial and Congressional Rulemaking on Civil Juries, Civil Justice and Civil Judging*, 49 Ala. L.Rev. 133, 137–152 (1997); *Developments in the Law—The Civil Jury*, 110 Harv. L.Rev. 1408, 1466–89 (1997). Now that Congress has taken note, H.R.Rep. No. 107–278 (2001), and the Judicial Conference of the United States has promised reform, Judicial Conference of the United States, Report on the Jury System in the Federal Courts, Feb. 1, 2002 at 13–15, one hopes the inadequacies of Rule 48 may promptly be reconsidered.

suffering and no doubt contributed to the series of events that culminated in her death, her death was not caused by "complications of asphyxia by choking" as that phrase is understood either by a layperson or by physicians.

When, therefore, on the seventeenth day of trial, the defendants renewed their motion to strike the death certificate, this Court reversed itself and agreed in part. The Court reasoned that, as the reliability of the government record is a preliminary question of fact for the Court, Fed.R.Evid. 104(a), and as the Court was no longer persuaded by the fair preponderance of the evidence that "complications of asphyxia by choking" was the primary cause of Betty Ann Blake's death, fairness (and the evidentiary rules) required action. Accordingly, the Court struck the reference to "asphyxia by choking" in the death certificate and so instructed the jury.[2]

The Blakes seek to revisit this ruling here in their timely motion for new trial. To set the stage, the Court acknowledges that this ruling, coming as it did after the Blakes had rested and towards the end of the case, was one which "affect[ed] substantial rights." Fed.R.Evid. 103(b). If error there was, it was not harmless.

To the extent that the Blakes seek to re-plough ground already tilled at trial, however, no extended discussion is here required. The Court is content to stand on its explanation made on the trial record. Hrg. Tr. 32:7—34:20 (Nov. 14, 2001). The Blakes do, however, raise for the first time two arguments which must be addressed.

## A. Admission as a Record of Vital Statistics

The Blakes contend that the death certificate should have been admitted as a record of vital statistics pursuant to Fed. R.Evid. 803(9). Rule 803(8) governs the admission of public records and reports. Rule 803(9) governs the admission of records of vital statistics. The Plaintiffs are correct that there is some overlap between the two rules, as a death certificate could be considered either a record of vital statistics or a public record. This argument, however, will not carry the Blakes very far.

The Court agrees that, pursuant to Rule 803(9), the death certificate should have been admitted to prove the fact of Betty Ann Blake's death, its date and time, and other pertinent identifying data such as the name of the attending physician. This, however, is precisely the course the Court followed and, to the extent it was relevant, none of this data was disputed at trial.

■ Identifying primary and secondary *causes* of death is a qualitatively different function, one which frequently involves making sophisticated medical judgments on the basis of physical examination, medical history and records, and (when necessary) actual autopsy. While it is true that reliable epidemiological and other scientific studies are not infrequently based on review of death certificates (including causes of death) in the aggregate, this is because it is believed that in any large scale study individual errors in particular certificates will either cancel each other out or be of such marginal significance as not to impair the impact of aggregate studies. While in this sense it is proper to think of an entire death certificate as a vital statistic, when only a single certificate is under consideration, as here, it would be improvident to read Fed.R.Evid. 803(9) as *requiring* admission notwithstanding the express proto-

**2.** A mid-trial course correction of such magnitude necessarily presents a court with a classic "no win" situation. Had a Plaintiffs' verdict ensued, the Defendants would no doubt be here complaining that the Court's ruling in their favor came too late in light of the aphorism, common in trial practice, that it is impossible to "unring the bell."

col of Rule 803(8)(c), which limits admissibility if "the sources of information or other circumstances indicate lack of trustworthiness." Fed.R.Evid. 803(8)(c).

The pertinent case law bears this out. "A trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof—whether narrow 'factual' statements or broader 'conclusions'—that she determines to be untrustworthy." *Beech Aircraft v. Rainey*, 488 U.S. 153, 167–68, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) (discussing the "provision for escape" from the generally admissible presumption of Rule 803(8) and noting that rules relating to relevance and prejudice provide additional means through which a trial judge may exclude untrustworthy evidence); *see Smith v. Mass. Inst. of Tech.*, 877 F.2d 1106, 1112–1113 (1st Cir.1989) (affirming exclusion of EEOC findings deemed untrustworthy). There was no error.

## B. Admission as a State Law Presumption

■ The Blakes fault the Court for following federal law in this case, pointing out that Fed.R.Evid. 302 requires that "[i]n civil actions and proceedings, the effect of a presumption respecting a fact which is an element of a claim or defense as to which state law supplies the rule of decision is determined in accordance with state law." Massachusetts law provides that "[t]he record of the town clerk relative to a ... death shall be prima facie evidence of the facts recorded ...." Mass. Gen. Laws ch. 46, § 19. Under Massachusetts law, "prima facie evidence"[3] is one species of a larger genus of evidentiary relationships; "presumptions" is another. *See* Young, Pollets & Poreda, 19 *Mass. Prac. Evid.* § 301.9. Indeed, the evidentiary relationship Massachusetts terms "prima facie evidence" the First Circuit calls presumptions of the "middle ground." *United States v. Jessup*, 757 F.2d 378, 383 (1st Cir.1985) (Breyer, J.). Mining this vein, the Blakes believe they strike pay dirt, arguing that "prima facie evidence" and "presumptions" are evidentiary relationships which are so sufficiently alike that the express mandate of Fed.R.Evid. 302 here requires application of the evidentiary law of Massachusetts, *not* the Federal Rules of Evidence—at least with respect to their malpractice claims.

As the plaintiffs argue, Massachusetts law requires a death certificate record the "cause of death, defined so that it can be classified under the international classification of causes of death ...", Mass. Gen. Laws ch. 46, § 1 (2002), and that such

> record of the town clerk relative to a ... death shall be prima facie evidence of the facts recorded, but nothing contained in the record of a death which has reference to the question of liability for causing the death shall be admissible in evidence.

*Id.* § 19.

■ The international classification of causes of death "calls for a statement of (1)

---

**3.** "Prima facie evidence is evidence which standing alone and unexplained maintains the proposition and warrants the conclusion to support which it is introduced." *Chandler v. Prince*, 217 Mass. 451, 454, 105 N.E. 1076 (1914) (internal quotations and citations omitted). In other words, "[t]he effect of statutes which denominate certain facts as prima facie evidence is that, where such fact is proved and there is no other evidence and no foundation for contrary inferences, the conclusion it

supports must follow." *Id.* at 455, 105 N.E. 1076. The prima facie evidence rule thus require[s] the jury to find the dependant fact in the absence of evidence rebutting the dependent fact, and, even when the dependent fact is rebutted, "[s]uch [prima facie] evidence will remain in the case and be accorded such weight as the jury sees fit to give it." Young, Pollets & Poreda, 19 *Mass. Prac. Evid.* § 301.9 (internal quotations omitted).

the principal cause of death and related causes of importance, and (2) contributory causes of importance." *Lydon v. Boston Elevated Ry.*, 309 Mass. 205, 214, 34 N.E.2d 642 (1941). Indeed, a death certificate is admissible even though words contained therein may incidentally bear on the question of liability. *Commonwealth v. Lannon*, 364 Mass. 480, 484, 306 N.E.2d 248 (1974); *Wadsworth v. Boston Gas Co.*, 352 Mass. 86, 93, 223 N.E.2d 807 (1967); *Trump v. Burdick*, 322 Mass. 253, 255, 76 N.E.2d 768 (1948).

Under Massachusetts law, therefore, the only questions presented are (1) whether the opinion of the medical examiner under section 1 of Chapter 46 of the Massachusetts General Laws that Betty Ann Blake's death was occasioned by complications of asphyxia by choking is generally admissible as a public record, and, if so, (2) is it nevertheless excluded under section 19 of Chapter 46 of the Massachusetts General Laws as having "reference to the question of liability." There can be little doubt but that the medical examiner's opinion as to the cause of death is generally admissible. *Krantz v. John Hancock Mutual Life Ins. Co.*, 335 Mass. 703, 711, 141 N.E.2d 719 (1957) (Whittemore, J.) (upholding the admissibility of the term "suicide" in a death certificate, reasoning that "[t]he opinion ... becomes prima facie evidence by virtue of the statute and not because of probative force necessarily inherent in it or in the underlying facts."); *see also Noseworthy v. Allstate Life Insurance Co.*, 40 Mass.App. 924, 925, 664 N.E.2d 470 (1996) (citing *Krantz* and holding insurer-defendant entitled to submit unredacted death certificate that included the term "suicide" under Mass. Gen. Laws ch. 46, § 19). Thus, under Massachusetts law, so the Blakes argue, the death certificate was admissible in its entirety. Since the death certificate establishes an evidentiary relationship akin to a presumption—it is considered prima facie evidence of the cause of death—the Court, pursuant to rule 302, ought have applied the state law rule of presumption, and admitted the document.

## 1. Flaws in this Analytic Framework

As a preliminary matter, the Court rejects the Blakes proffered analysis. Prima facie evidence significance is accorded to a dependent fact from a basic fact introduced in evidence. Take, for example, the familiar mailbox presumption—if a letter is proven to have been mailed, it is presumed that the recipient received it. To obtain the benefit of the presumption, the proponent must prove that the letter was properly addressed, stamped, and mailed. This might be through documentary evidence such as a registered mail receipt, through testimony of the individual that actually mailed the letter, or the like. This evidence must be introduced in accordance with the rules of evidence. One could not, for example, use hearsay testimony to show that the letter was stamped (e.g., "I heard Jim tell Steve that he addressed the letters.").

In other words, the Blakes have the cart before the horse. To be sure, if admitted the death certificate would have had the effect established by the state law of presumptions and prima facie evidence. Whether or not the certificate is admitted in the first place, however, is not governed by the law of presumptions and prima facie evidence, state or federal, it is governed by the rules of evidence. Pursuant to those rules, the death certificate was not admissible. Thus, irrespective of the effect of the death certificate once admitted, this Court was required to evaluate it for relevance, reliability, prejudice, exemption from the rule against hearsay, and the like before deciding to admit it.

The Massachusetts statute establishing the prima facie status itself recognizes the distinction between admissibility and presumption. The statute provides that the death certificate shall be prima facie evidence of the facts recorded, "but nothing contained in the record of a death which has reference to the question of liability for causing the death shall be *admissible* in evidence." Mass. Gen. Laws ch. 46 § 19 (emphasis added). Thus, the statute draws a distinction between the effect of the certificate as admitted—prima facie evidence—and whether portions of the certificate ought be admitted in evidence. The relevant caselaw supports this analysis.

"While the [Federal Rules of Evidence] do show a desire by Congress to defer to state law in diversity cases on such matters as presumptions (Rule 302), privileges (Rule 501) and competency (Rule 601), there is no similar deference concerning the *admissibility of documentary evidence.*" *Pollard v. Metro. Life Ins. Co.*, 598 F.2d 1284, 1286 (3d Cir.1979) (affirming district court's admission of only a portion of a death certificate under Federal Rule of Evidence 403 and rejecting argument that state law should have governed admissibility of death certificate); accord Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5133 ("In determining whether an official record was admissible, the court would not have to apply a state presumption of official regularity."). Since the admissibility of documentary evidence would appear to be governed by the Federal Rules of Evidence alone, the Court's action here—based · as it was on Fed.R.Evid. 803(8)(c)—was correct.

Indeed, this result is foreshadowed by the decision of the First Circuit in *Minh Tu v. Mutual Life Ins. Co. of N.Y.*, 136 F.3d 77, 80 (1st Cir.1998) where that court affirmed summary judgment for a defendant in a diversity case where a Massachusetts death certificate would normally have taken the case to the jury. There, Judge (now Chief Judge) Boudin, speaking for the court, said:

> We do not think that the [Massachusetts] legislature intended the [death certificate] statute, or that the Massachusetts courts would interpret it, to require judges to perpetrate a fraud on the jurors. It makes no difference whether we treat this result as an implied exception to the Massachusetts statute or rely upon limitations reflected in Fed.R.Evid. 401, 403 and 901—concepts also applicable under Massachusetts law.

*Id.* at 80.

Accordingly, this Court committed no error in applying the Federal Rules of Evidence and excluding a portion of the death certificate from admission.

### 2. State—Federal Admissibility Conflicts

None of the parties has argued the logic the Court follows here. Instead, they conflate proof of the basic fact with proof of the dependant fact. Even were the Court to adopt this approach, however, the Blakes would ultimately fail. While the Defendants argue that, under *Julian v. Randazzo*, 380 Mass. 391, 393, 403 N.E.2d 931 (1980), the opinion of the medical examiner was properly excluded from the death certificate, Hrg. Tr. 20:14–17 (Jan. 15, 2002), this is not persuasive. In *Julian*, the Supreme Judicial Court held that the admission in evidence of opinions in a police report was improper. 380 Mass. at 392, 403 N.E.2d 931. Relying on *Commonwealth v. Slavski*, 245 Mass. 405, 140 N.E. 465 (1923), *Julian* held that "[a] record of a primary fact, made by a public officer in the performance of official duty

is or may be made by legislation competent prima facie evidence as to the existence of that fact;" however, records of investigations or inquiries are not admissible if they concern "causes and effects involving the exercise of judgment and discretion, expressions of opinion, and making conclusions ..." even though compiled pursuant to a requirement of law. *Julian,* 403 N.E.2d at 933 (citations omitted).

The nature of the medical examiner's death certificate here diverges significantly from the police record at issue in *Julian,* because "causes and manners of death in [a death certificate] are necessarily matters of opinion or judgment deduced from other facts found rather than matter of direct observation." *Dow v. United States Fidelity & Guaranty Co.,* 297 Mass. 34, 37, 7 N.E.2d 426 (1937). A police report, in contrast, routinely includes recitation of direct observations so the exclusion therefrom of "opinion" and "recommend[ations]" based on "second level" hearsay, *see Julian,* 380 Mass. at 393–394, 403 N.E.2d 931, has little bearing on the decision whether to admit a death certificate which "necessarily [exemplifies] matters of opinion or judgment deduced from other facts." *Dow,* 297 Mass. at 37, 7 N.E.2d 426.

Moreover, Massachusetts has expressly rejected the Defendants' position. In *Krantz,* the plaintiff sought to exclude that portion of the death certificate that indicated the deceased committed suicide. 335 Mass. at 709, 141 N.E.2d 719. The plaintiff contended that there was no other evidence that the deceased committed suicide, and thus the denomination of suicide ought be struck from the certificate as false opinion. The Supreme Judicial Court rejected that position and commented that the fact "becomes prima facie evidence by virtue of the statute and not because of probative force necessarily inherent in it or in the underlying facts." *Id.* (emphasis

added). Thus, in Massachusetts, it is arguable that the certificate was admissible in its entirety.

Section 19, however, explicitly excludes from admissibility any statement in the death certificate that has "reference to the question of liability for causing the death." Mass. Gen. Laws ch. 46, § 19 (2002). This clause has been analogized to the "strikingly similar" hospital record provisions and it has been held that "a record which related directly and mainly [to the causes of death] should be admitted, even though incidentally the facts recorded may have some bearing on the question of liability." *Trump,* 322 Mass. at 254–55, 76 N.E.2d 768; *see Lannon,* 364 Mass. 480, 484, 306 N.E.2d 248. *Trump* held that the "medical facts" in the death certificate, such as injuries to the side of the head, ear, and arm following the phrase "Taxi cab"— which arguably reflected on liability—were admissible. 322 Mass. at 255, 76 N.E.2d 768. Similarly, in a contest over admissibility of the words "illuminating gas" in a negligence case, *Wadsworth v. Boston Gas Co.,* 352 Mass. 86, 223 N.E.2d 807 (1967), held that "the recital of injury or death from inhalation of illuminating gas, standing alone, does not impute fault or freedom from fault to anyone." *Id.* at 93, 223 N.E.2d 807. Finally, the *Krantz* court, while holding there was "no question of liability" in that insurance dispute, added that "the language of the statute does not say 'but nothing which would be relevant to the issue of liability of causing death shall be admissible in evidence in any case.'" 335 Mass. at 710, 141 N.E.2d 719.

The same is true here. The words "complications of asphyxia by choking" represent medical opinion that refers to circumstances which, standing alone, do not impute fault to anyone and only incidentally bear on the question of liability. Under Mass. Gen. Laws ch. 49, § 19,

therefore, it can well be argued that the entire death certificate unredacted ought have gone to the jury room and enjoyed its full probative effect with respect to the pendant malpractice claims as to which state law supplies the rule of decision. This, at least, might well have been the proper course had this case been tried in the Superior Court of the Commonwealth of Massachusetts.

It does not necessarily follow, however, that a ruling that would have been clear error, were I still a Justice of the Massachusetts Superior Court, is error in a United States District Court. Excision of the unreliable language was correct under federal law with respect to the Americans with Disabilities Act claim even though it might have been error under state law with respect to the remainder of the case—hence a conflict between state and federal rules of admissibility.

Resolution of this knotty problem is not adequately resolved by the Federal Rules of Evidence and has not been addressed by the First Circuit. *See generally* Patti B. Saris, Massachusetts Rules of Evidence in the Federal Courts, *Massachusetts Evidence* § 2.1 (MCLE) (1999). There is some authority for according primacy to whichever evidence rule favors admissibility in such circumstances. *See, e.g. William T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 104 (3d Cir.1982) (conflicting privileges). The better rule, however, would appear to accord supremacy to the evidentiary rule that has the most probative force, Michael H. Graham, Handbook of Federal Evidence § 301.11 (5th ed. 2001) ("[A]pply the presumption founded upon weightier considerations of social policy"). *Accord* Morgan, *Some Observations Concerning Presumptions,* 44 Harv. L.Rev. 906, 932 n. 41 (1931). Probative force, in turn, implicates concerns over the search for existential truth. Here,

that balancing strongly mandates exclusion of the language in light of the significant consensus among experts that, whatever the etiology of Betty Ann Blake's death, it was not "complications of asphyxia by choking." In the circumstances of this case, therefore, notwithstanding the public policy of Massachusetts as expressed in Mass. Gen. Laws ch. 49, § 19 and the fact that, had the malpractice claims been tried in the Massachusetts Superior Court, the cause of death language in the death certificate could well have been admitted, exclusion of that language was proper.

## III. CONCLUSION

What at first appears a thorny problem is made substantially simpler through use of the appropriate analytic framework. Admissibility is a precursor to presumption. In other words, before this Court could consider the effect of a Massachusetts presumption statute, the facts warranting the presumption must first be admitted in evidence. The admissibility determination is made solely with reference to the Federal Rules of Evidence, pursuant to which only the redacted death certificate is admissible.

Moreover, even were the analytic framework proffered by the parties accepted, when confronted with conflicting rules of admissibility, this Court applies the rule which best supports its truth-seeking function. It is clear, on this record, that admission of the redacted portion of the death certificate would only have served to obscure the truth-seeking function of the jury.

For these reasons, the motion for a new trial [Docket No. 270}] is DENIED.

SO ORDERED.