# United States Court of Appeals
## For the First Circuit

No. 02-1810

WILLIAM J. BLAKE, ET AL.,
Plaintiffs, Appellants,

v.

MICHAEL PELLEGRINO, ET AL.,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Selya, Circuit Judge,

Stahl, Senior Circuit Judge,

and Lipez, Circuit Judge.

Philip N. Beauregard, with whom John A. Markey, Jr. and Beauregard, Burke & Franco were on brief, for appellants.

Curtis Diedrich, with whom Alan B. Rindler, Nadine Nasser Donovan, Rindler•Morgan, P.C., William J. Davenport, Richard M. Haley, Bloom & Buell, Stacey Morris, and Sloane & Walsh, LLP were on consolidated brief, for individual appellees.

J. Peter Kelley, with whom Martin C. Foster and Foster & Eldridge were on brief, for appellee Southcoast Health Systems, Inc., d/b/a Charlton Memorial Hospital.

May 15, 2003

**SELYA, <u>Circuit Judge</u>**.  This appeal requires us to explore the limits of a trial judge's authority to remove a significant piece of evidence from a jury's consideration based upon his belief that the evidence lacks persuasive force.[1]  We conclude that, in the circumstances of this case, the judge's actions invaded the province of the jury.  Because there is a reasonable likelihood that the error influenced the eventual verdict, we vacate the judgment as to the affected claims and remand the case for a new trial.

## I.  BACKGROUND

On October 30, 1998, Betty Ann Blake, a profoundly disabled woman in her mid-forties, was eating her mid-day meal at a daycare facility.  A piece of meat lodged in her throat.  She was taken to the emergency room at Charlton Memorial Hospital (the Hospital) in Fall River, Massachusetts.  Although laypersons speculated that Betty Ann might be choking, she apparently refused to open her mouth and the doctors on duty did not conduct a full examination.

Betty Ann was admitted to the Hospital.  The following day, she had a seizure and began to display labored breathing.  The doctors performed an esophagoscopy.  During the procedure, they discovered a bolus of meat in Betty Ann's esophagus and dislodged

---

[1]The district court used "persuasiveness" and "credibility" as rough synonyms in connection with this ruling, and we too use those terms as proxies for one another.

it.  Shortly thereafter, Betty Ann suffered a heart attack.  She died on November 1, 1998 (approximately twenty-four hours after physicians removed the piece of meat from her esophagus).  The death certificate filed by the medical examiner listed "complications of asphyxia by choking" as the cause of death.

Betty Ann's parents, William and Theresa Blake, individually and as co-administrators of her estate, subsequently sued the Hospital and a trio of physicians (Drs. Michael Pellegrino, Miguel Brillantes, and Thomas Cahill).  Their complaint, filed in the federal district court, charged that the defendants had negligently failed to diagnose Betty Ann's condition and had discriminated against her in violation of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181-12189, and the Rehabilitation Act, 29 U.S.C. §§ 701-796l.  In the course of pretrial proceedings, the district court dismissed the ADA claim and granted summary judgment for the physician-defendants on the Rehabilitation Act claim.  The plaintiffs have not appealed from those orders.

The case went to trial on the remaining counts, which included the Rehabilitation Act claim against the Hospital, see 29 U.S.C. § 794, and state-law claims, grounded in malpractice, for wrongful death and negligent infliction of emotional distress against the physicians.  At the start of the trial, the physician-defendants moved in limine to exclude the death certificate.  The

-3-

court ruled that the death certificate constituted admissible evidence and denied the motion.  The plaintiffs promptly introduced it into evidence and published it to the jury.  The court then allowed the jurors to inspect copies of the death certificate.

On the fifteenth day of trial, the plaintiffs rested. The physician-defendants moved, inter alia, to strike the listed cause of death from the death certificate.  The plaintiffs objected.  On the seventeenth day of trial — before the defendants had presented any evidence — the district judge excised the words "asphyxia by choking" from the death certificate, stating that he had come to believe that Betty Ann's death was "not caused by 'complications of asphyxia by choking' as that phrase was understood either by a layperson or by physicians."[2]

The trial lasted another three days.  After final arguments and the court's charge, the jury commenced its deliberations.  On November 26, 2001, the jury returned a verdict for the Hospital on the Rehabilitation Act count but informed the court that it had reached an impasse on the remaining claims.  The court gave the deadlocked jurors a modified Allen charge, see Allen

_____

[2]The physician-defendants argued — and the court apparently came to believe — that Betty Ann experienced an aspiration, not asphyxia by choking.  By aspiration, the defendants meant "the effects of saliva going down into the lungs . . . which can lead to infection, fluid in the lungs, and then death if left untreated." Br. of the Physician-Appellees at 23.  This was a more likely cause of death than asphyxia, they posited, inasmuch as Betty Ann "did not suffer an obstruction of her airway at any time when she was in the hospital."  Id.

-4-

v. <u>United States</u>, 164 U.S. 492, 501 (1896); <u>United States</u> v. <u>Keene</u>, 287 F.3d 229, 235 (1st Cir. 2002), and directed them to resume deliberations. On November 27, the jury returned an across-the-board verdict for the defendants.

The plaintiffs filed a timely motion for a new trial. Fed. R. Civ. P. 59(a). As to the state-law claims, they argued that the district court had erred in redacting the death certificate, and, moreover, that the timing of the court's actions — allowing them to introduce the unredacted death certificate, publish it to the jury, and build their case around it, and then striking the pivotal language — had doomed their chances of prevailing. As to the Rehabilitation Act claim, the plaintiffs sought a new trial based on the district court's exclusion of medical records of non-disabled patients. The lower court took the matter under advisement. It eventually denied the motion in a written opinion. <u>See</u> <u>Blake</u> v. <u>Southcoast Health Sys., Inc.</u>, 206 F. Supp. 2d 174 (D. Mass. 2002). The court insisted that none of its actions constituted error. <u>Id.</u> at 182. With admirable candor, however, the court conceded that if it had erred in the mid-trial redaction of the death certificate, its error was not harmless (and, thus, would require a new trial). <u>Id.</u> at 177. This appeal ensued.

## II.  THE STATE-LAW CLAIMS

The issue that lies at the heart of this appeal relates to the trial court's handling of an evidentiary matter.  When an issue as to the admission or exclusion of evidence involves a question of law, such as the proper interpretation of a provision contained in the Federal Rules of Evidence, we afford de novo review.  Crowley v. L.L. Bean, Inc., 303 F.3d 387, 394 (1st Cir. 2002).  When, however, the issue involves an application of a given rule of evidence to particular facts or a judgment call about, say, relevancy, we review solely for abuse of discretion.  Id.

Identifying the precise question at issue in this appeal poses certain complications.  These complications arise primarily from the parties' disagreement about whether federal or state law governs the admissibility vel non of the death certificate.  The plaintiffs argue that state law controls because, by statute in Massachusetts, a party is entitled not only to introduce an official death certificate but also to have it serve as prima facie evidence of the cause of death.  Mass. Gen. Laws ch. 46, § 19.  In the plaintiffs' view, the Federal Rules of Evidence "are not intended to substitute for, or trump, a clear state substantive right to have certain evidence admitted in a state tort death claim."  Br. of Appellants at 27.  The defendants argue to the contrary, asserting the primacy of the Federal Rules of Evidence. See, e.g., Br. of Physician-Appellees at 25 ("The fact that a state

-6-

statute also existed regarding the admissibility of the death certificate [does] not trump the force of the Federal Rules of Evidence.").  Although this is an interesting pedagogical debate, we do not resolve it here.  Assuming arguendo that the Federal Rules of Evidence govern — an assumption consistent with the district court's position and optimally favorable to the defendants — the district court's handling of the evidence, as we explain below, does not pass muster.

## A.  **The Error**.

The fundamental question posed in this case implicates the division of responsibility between judge and jury.  It asks whether a judge, presiding over a jury trial, may rule on the admissibility of evidence based upon his view of the persuasiveness of that evidence.  In other words, may a trial judge refuse to admit evidence simply because he does not believe the truth of the proposition that the evidence asserts?  In the circumstances of this case, we answer that question in the negative.[3]

---

[3]Of course, there are specific circumstances in which a trial judge's view of the credibility of the evidence is an important variable in the calculus of admissibility.  The most obvious example is in a so-called Daubert hearing.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993) (explaining that "the Rules of Evidence . . . assign to the trial judge the task of ensuring that an expert's testimony . . . rests on a reliable foundation"); see also United States v. Sebaggala, 256 F.3d 59, 65-66 (1st Cir. 2001) (discussing a trial court's considerable latitude in the admission and exclusion of expert testimony under Fed. R. Evid. 702).  The case at hand does not fit within any of these exceptions.

The disputed evidence in this case — the cause of death specified in the death certificate — was plainly relevant to the issues before the court. See Fed. R. Evid. 401. Even so, a district court has the authority to exclude relevant evidence for various reasons. See, e.g., Fed. R. Evid. 403 (allowing the exclusion of evidence if the court finds that its probative value is substantially outweighed by its unfairly prejudicial effect, or that the evidence would tend to confuse or mislead the jury). But none of these mechanisms allows a trial judge to remove relevant evidence from the jury's universe solely because he finds the evidence unpersuasive. Perhaps more importantly, the trial judge in this case did not invoke any of them. Indeed, the judge made it very clear that persuasiveness (or the lack of it) was the perceived problem. See Blake, 206 F. Supp. 2d at 177 (attributing the decision to redact to the fact that "the Court was no longer persuaded by the fair preponderance of the evidence that 'complications of asphyxia by choking' was the primary cause of Betty Ann Blake's death"); id. at 176-77 ("As the trial progressed . . . it became increasingly evident [to me] that, whatever had caused the death of Betty Ann Blake after twenty-seven hours of suffering, it was not 'complications of asphyxia by choking.'").

The question reduces, therefore, to whether, in the absence of special circumstances, see supra note 3, a trial judge has the authority to exclude evidence on the basis of his own

-8-

belief as to the persuasiveness of that evidence. We conclude that, in a jury trial, no such authority exists. After all, the jury is the factfinder, and "the ultimate arbiter of the persuasiveness of the proof must be the factfinder, not the lawgiver." Greenburg v. P.R. Maritime Shipping Auth., 835 F.2d 932, 937 (1st Cir. 1987). This premise has gone unchanged over the years. See, e.g., Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 114-15 (1963); Tennant v. Peoria & Pekin Union Ry. Co., 321 U.S. 29, 35 (1944). "It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses . . . and draws the ultimate conclusions as to the facts." Boston & Me. R.R. v. Cabana, 148 F.2d 150, 152 (1st Cir. 1945) (citing Tennant, 321 U.S. at 35).

In arrogating unto itself the power to evaluate the persuasiveness of the medical examiner's conclusion about the cause of death, memorialized in the death certificate, the district court adverted to Fed. R. Evid. 104(a) and Fed. R. Evid. 803(8) as the wellsprings of its authority. Neither of these rules adequately underpins the court's action.

Fed. R. Evid. 104(a) provides in pertinent part that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court." This rule enables a trial judge to decide whether foundational facts have been

established (and, thus, whether particular pieces of evidence are eligible for admission).  See Sacramona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 446 (1st Cir. 1997).  The trial court "act[s] as a gatekeeper" when such issues arise.  United States v. Holmquist, 36 F.3d 154, 167 (1st Cir. 1994).  "If the court discerns enough support in the record to warrant a reasonable person in determining that the evidence [could support that which it sets out to support, then] the weight to be given to the evidence is left to the jury."  United States v. Paulino, 13 F.3d 20, 23 (1st Cir. 1994).

Rule 104(a) is inapposite here, for no foundational facts were in issue.  Virtually by definition, foundational facts are those facts upon which the admissibility of evidence rests.  See United States v. Piper, 298 F.3d 47, 52 (1st Cir. 2002); Paulino, 13 F.3d at 23.  Those facts include matters such as the genuineness of a document or statement, the maker's personal knowledge, and the like.  See, e.g., Newton v. Ryder Transp. Servs., 206 F.3d 772, 775 (8th Cir. 2000); Ricketts v. City of Hartford, 74 F.3d 1397, 1410 (2d Cir. 1996); Onujiogu v. United States, 817 F.2d 3, 5 (1st Cir. 1987).  In this instance, those facts (e.g., the authenticity of the death certificate and the authority of the medical examiner to sign it) were never in dispute.  The district court's problem did not go to any foundational fact, but, rather, to the very core of the evidence:  its persuasiveness.  Where, as here, a piece of

evidence rests upon a proper foundation, Rule 104(a) does not permit a trial judge to usurp the jury's function and exclude the evidence based on the judge's determination that it lacks persuasive force.

The district court also suggested that Fed. R. Evid. 803(8) empowered it to redact the death certificate based on the perceived lack of credibility. We do not agree. The rule provides that public records are not excluded by the hearsay rule "unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8). Trustworthiness in this context refers to matters such as whether the evidence is self-authenticating or contemporaneously compiled by a person of adequate skill and experience. See Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167 n.11 (1988); FDIC v. Houde, 90 F.3d 600, 606 (1st Cir. 1996); see also Fed. R. Evid. 803 advisory comm. notes to ¶ (8), subsection (c). As the district court's explication makes plain, the court did not base its ruling on the manner in which the death certificate was completed, the sources of information utilized, the credentials of the person completing it, or how the record was maintained. Instead, the court premised its ruling on the substance of what the death certificate contained. This was error: Rule 803(8) does not authorize a trial court to deem evidence untrustworthy (and thus inadmissible) simply because the court finds the gist of the evidence incredible or unpersuasive.

-11-

For these reasons, we conclude that the mid-trial redaction of the death certificate, based on the district court's assessment that it lacked credibility, constituted error.

## B. **Was the Error Harmless?**

Our determination that the district court erred in redacting the death certificate on the basis of a credibility determination does not end our inquiry. That error necessitates a new trial only if it affected the plaintiffs' substantial rights. Fed. R. Civ. P. 61. The test for harmless error in this case therefore depends on whether the erroneous exclusion of evidence "result[ed] in actual prejudice because it had a substantial and injurious effect or influence in determining the jury's verdict." Ruiz-Troche v. Pepsi Cola Bottling Co., 161 F.3d 77, 87 (1st Cir. 1998) (citation omitted). Because this determination is context-specific, Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 102 (1st Cir. 1997), we can sustain the instant verdict only if we can say with fair assurance, after whole-record review, that the lower court's mid-trial redaction of the death certificate did not substantially affect the jury's ultimate decision. See Kotteakos v. United States, 328 U.S. 750, 765 (1946).

Applying this standard, we conclude that the error requires vacation of the judgment on the state-law claims. We rest this conclusion in substantial part on the district court's own assessment of the situation. The court candidly described the

-12-

essential role that the death certificate played in the plaintiffs' presentation of their malpractice claims, calling the stricken language "the centerpiece of the Blakes' theory." Blake, 206 F. Supp. 2d at 176. The court went on to conclude that if its redaction of the document entailed error, that error "was not harmless." Id. at 177.

We do not take these conclusions lightly. Trials are, by their nature, dynamic and highly nuanced affairs. The district court had first-hand knowledge of the ebb and flow of the proceedings — knowledge that cannot fully be replicated by reading a cold appellate record. Consequently, we accord great respect to its conclusion regarding the centrality of the redacted language. See, e.g., United States v. Shay, 57 F.3d 126, 134 & n.7 (1st Cir. 1995). The court's appraisal of the effect of the redaction is equally deserving of deference. See Long v. Cotrell, Inc., 265 F.3d 663, 667 (8th Cir. 2001) (noting that the trial court is in a superior position to measure the effects of trial error); cf. Whiting v. Westray, 294 F.3d 943, 944 (7th Cir. 2002) (deferring to trial judge's determination of harmlessness of attorney misconduct in ruling on motion for a new trial).

Here, moreover, the timing of the redaction — on the seventeenth day of a twenty day trial and after the plaintiffs had rested — magnifies the prejudice occasioned by the error. The plaintiffs had gone out on a limb and built their case around the

redacted language — a reasonable tactic, considering the district court's denial of the defendants' motion in limine and its unconditional admission of the death certificate into evidence. The court then abruptly reversed direction and sawed the limb off at the eleventh hour, bringing the plaintiffs' case down with it. It is difficult to imagine a more prejudicial turn of events.[4]

To be sure, the district court attempted to ameliorate the untoward effects of its about-face by instructing the jury not to draw any conclusions based on the fact of the redaction. But this is not a garden-variety instance of allowing a jury to see tainted evidence and then excluding it. In the peculiar circumstances of this case, we do not think that any curative instruction would have sufficed.

The general rule is straightforward: courts "normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it." Greer v. Miller, 483 U.S. 756, 766 n.8 (1987). The exception to the general rule is equally straightforward: the usual presumption does not

---

[4]The district court might have mitigated the potential prejudice had it taken a more cautious approach when considering the motion in limine. For example, the court might have admitted the evidence conditionally or withheld a ruling on the motion until the case came into sharper focus. We hasten to add, however, that we offer these suggestions principally for the guidance of other courts in future cases — and we do so recognizing that hindsight is always 20/20. "Trial judges, whose lot is often to make swift battlefield decisions on tangled evidentiary matters, cannot be expected to foretell the future with absolute accuracy." United States v. Sepulveda, 15 F.3d 1161, 1184 (1st Cir. 1993).

apply when there is an "overwhelming probability" that the instruction will be ineffectual. Richardson v. Marsh, 481 U.S. 200, 208 (1987). Here, the likelihood is very great that the removal of the evidence — what the district court termed "the centerpiece" of the plaintiffs' case — was devastating. That is enough to warrant a new trial. See Bruton v. United States, 391 U.S. 123, 135 (1968) (noting that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the [party introducing the evidence], that the practical and human limitations of the jury system cannot be ignored"); cf. Anderson v. Butler, 858 F.2d 16, 18 (1st Cir. 1988) (holding that when evidence is promised, and then not received, jurors likely will draw a "heavy" adverse inference from its non-appearance).

## III. THE REHABILITATION ACT CLAIM

There is an additional matter that warrants our attention. The jury found for the Hospital on the Rehabilitation Act claim, and the notice of appeal also brings that aspect of the judgment before us.

The Rehabilitation Act claim is structurally different from the state-law malpractice claims, and the plaintiffs, on appeal, have neither addressed any developed argumentation to this aspect of the jury's verdict nor given any explanation as to how the belated redaction of the death certificate prejudiced the

-15-

presentation of their Rehabilitation Act claim. By the same token, they have not pursued their claim of error in the exclusion of relevant medical records. See supra.

It is a familiar rule in this circuit that when issues on appeal are unaccompanied by some meaningful effort at developed argumentation, they are deemed to have been abandoned. See, e.g., Ryan v. Royal Ins. Co., 916 F.2d 731, 734 (1st Cir. 1990); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). We therefore affirm the judgment entered in favor of the Hospital on the Rehabilitation Act claim.

To be sure, this removes from the framework of the case the hook upon which federal jurisdiction originally hung and leaves the district court, on remand, with only the state-law claims against the physician-defendants. The district court nonetheless has the option of retaining supplemental jurisdiction and proceeding to retry the case. See Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (holding that on remand a district court has discretion, after assessing the totality of the circumstances, to retain supplemental jurisdiction over state-law claims "notwithstanding the . . . demise of all foundational federal claims").

## IV.  CONCLUSION

We need go no further. We affirm the judgment in favor of the Hospital on the Rehabilitation Act claim but vacate the

judgment in favor of the physician-defendants on the state-law claims and remand that aspect of the case for a new trial. By redacting the operative cause of death language from the death certificate on the ground that it lacked persuasive force, the district court invaded the jury's province and thus exceeded the scope of its discretion. Occurring, as it did, near the end of a long trial, the probability is intolerably high that this error unfairly caused the plaintiffs' trial strategy to boomerang and contaminated the ensuing verdict on the state-law claims.

Let us be perfectly clear. We do not hold that the death certificate must be admitted into evidence at a subsequent trial. There may be grounds for its exclusion apart from the deficient ground relied upon by the district court. See, e.g., Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988) (discussing trial courts' wide discretion in admitting or excluding evidence under Fed. R. Evid. 403). That question is not before us, however, and we express no opinion on it. After all, "when a trial court erroneously excludes evidence, and the exclusion meets the standard criteria of harmfulness, the harm is not cured by a mere possibility that other appropriate grounds for exclusion of the same evidence may later be found to exist." Ruiz-Troche, 161 F.3d at 88.

**The judgment in favor of Southcoast Health Systems, Inc., d/b/a Charlton Memorial Hospital is affirmed.** **The judgment in favor of the physician-defendants is vacated and the case is remanded for further proceedings consistent with this opinion. Costs are awarded to the plaintiffs as against the physician-defendants**.